Croy Manufacturing Company, Plaintiff-Appellant, v. Frank Marks, d/b/a Champion Products Company, Defendant-Appellee.

Gen. No. 50,201.

First District, First Division.

September 13, 1965.

Jurco, Damisch & Sinson, of Chicago (John W. Damisch and James R. Mitchell, of counsel), for appellant.

Alphonse Cerza and William Marosco, of Chicago, for appellee.

MR. JUSTICE KLUCZYNSKI delivered the opinion of the court.

Plaintiff, Croy Manufacturing Company brought suit against Frank Marks, d/b/a Champion Products Company, to recover the price of merchandise allegedly sold and delivered to defendant.

The cause was heard by the court and judgment rendered for defendant. On appeal by plaintiff questions are raised as to the pleadings, the evidence, and the court's rulings in the course of the proceedings.

The pleadings consisted of the complaint and an amended answer to which no reply was filed. The complaint alleged that plaintiff is engaged in the sale and distribution of automotive parts, and that on December 13, 1962 defendant purchased from it certain merchandise. Attached to the complaint as Exhibit A is a purchase order, on defendant's stationery, and signed by the defendant. The document, addressed to plaintiff, requested the entry of an order for "1"

quantity of "Lot Surplus as submitted" without specification as to price, unit or amount.

Plaintiff further alleged that under the terms of the agreement, defendant was to pay the account by the 10th of the month and if so paid a 5% discount would be allowed; upon failure to pay within the aforementioned period, a 5% interest charge would be assessed for vexatious delay. Plaintiff charged that there was an account stated between the parties pursuant to the contract, and that there is a balance due of $16,463.47, plus interest from April 10, 1963.

The amended answer, after denying the allegations of the complaint, charged that the attached Exhibit A was not an exhibit because it stated that there was purchased a "lot surplus as submitted" and no list of the items purchased had been submitted to the defendant. Defendant stated that he received and accepted some merchandise for which he paid plaintiff in full, and that there were other items delivered to him which were returned to plaintiff, and that there were still other items not saleable or acceptable to him which he requested plaintiff to pick up on numerous occasions, but which plaintiff has failed to do.

The amended answer further charged that any business dealings referred to were based upon an agreement between the parties that defendant would pay for merchandise he sold, and that plaintiff would pick up and accept all other merchandise not sold by him. Defendant, answering further, stated that he did not purchase outright the merchandise claimed to have been sold to him, but that he was to pay by financing one Maurice Polakoff for any merchandise sold; that plaintiff was to accept the return of any merchandise not sold; that defendant did pay for the merchandise he disposed of.

After denial of plaintiff's motion for summary judgment the case proceeded to trial and the evidence disclosed the following facts.

In 1962 Maurice Polakoff, a former employee of plaintiff, who on prior occasions had business relationships with defendant, was employed by D & D Machine Works and also operated from his home an independent business as sales agent, approached Glenn Stein of Croy with the suggestion that plaintiff might be willing to sell him certain surplus parts. This initial suggestion was turned down primarily because of Polakoff's financial condition. Polakoff then made contact with the defendant and told him of the available automobile parts, informed him that they could be sold, and that he would undertake to sell them if defendant would purchase the same.

When called by plaintiff under section 60 of the Practice Act (Ill Rev Stats 1963, c 110, § 60) Polakoff related the following conversation with the defendant: ". . . that there was an opportunity to buy some obsolete closeout merchandise that Croy Manufacturing Co. was—would sell, and I would bring a listing of that merchandise to him [defendant], and if he would want that merchandise I could buy it from him, and then I could also try to sell it, and if I would sell it, we would split the commission, or half of the expenses, or anyway we want to work it out . . . And he told me if I feel that you could sell that merchandise that you saw which Mr. Marks knew very little about that type of goods—he can't handle it regularly—he would permit me to buy it and he did."

Polakoff again made contact with Stein, who agreed to the transaction now that defendant was involved. Stein gave Polakoff a listing of the merchandise plaintiff would sell, which Polakoff took to the defendant who, in turn, gave Polakoff the purchase order for the particular goods described in the listing. Defend-

376

ant issued the December 13, 1962 purchase order directed to plaintiff for "1" quantity of "Lot Surplus as submitted." In his testimony, Polakoff valued the merchandise on this list as between three and four thousand dollars.

After issuance of the purchase order, Polakoff visited plaintiff's warehouse, and continued doing so once or twice each week, selecting merchandise from the listing and picking up a copy of the invoice for the items shipped a day or two previously. This procedure continued for several months, defendant sending his truck over to pick up parts so selected by Polakoff which were then delivered to and stored at defendant's place of business. Polakoff promoted their sale, and the profits were divided between them after deduction of expenses and payments to plaintiff.

Defendant gave testimony which was substantially in accord with that given by Polakoff. Defendant testified that he and Polakoff agreed to purchase surplus parts from plaintiff based on the list of goods Stein had given to Polakoff, and for which he had given the purchase order referred to. He further stated, "I was going to finance the purchase of these parts . . . . We agreed to purchase what is on that list. I gave Croy a purchase order . . . . They billed me. We picked it up. Our employee picked up the parts. Our truck driver picked up the goods at plaintiff's warehouse." Invoices for the goods were sent to defendant a day or two after delivery of the goods, which defendant testified to as being customary procedure and the usual method of dealing with plaintiff.

Defendant stated that Polakoff received 50% of the profits derived from the merchandise sold. Defendant stated that sometime after deliveries began he complained to Polakoff about the amount and quality of goods being shipped, and that some of the parts did not fit what they were marked for. Defendant at-

377

tempted but was unable to reach Stein who was then in a hospital.

Defendant further testified that some goods were returned to plaintiff and credit memoranda were issued by an employee of plaintiff though Stein testified that this employee did not have authority to receive the returned goods. Stein's testimony also corresponds substantially to the evidence described herein.

It is plaintiff's theory that the trial court erred in denying its motion for summary judgment, and in granting judgment for defendant. Plaintiff contends that the evidence at the time of the hearing on the motion for summary judgment and at the trial indicated that the parts had been sold and delivered to the defendant; that the defendant accepted the goods, and made no protest concerning their quality until long after control over them had been exerted by him. Additionally, plaintiff contends that the trial court committed prejudicial error in the conduct of the trial.

Defendant urges that the agreement between the parties was not one of outright sale of personal property, but one of delivery on consignment or sale and return, in accordance with the customs of the trade, agreement and conduct of the parties; and that plaintiff, by failing to file a reply to the amended answer admitted the affirmative defense therein contained, namely, that the business arrangement was one of consignment or sale and return. Defendant also urges that the errors claimed to have been committed by the trial court were harmless.

■ We believe it well settled that plaintiff's contention that its motion for summary judgment was improperly denied, is not reviewable. Its argument is effectively disposed of by the principle enunciated in Home Indemnity Co. v. Reynolds & Co., 38 Ill App2d 358, 367, 187 NE2d 274 (1963) where the court held

"that if a motion for summary judgment is improperly denied the error is not reversible for the result becomes merged in the subsequent trial." The holding in the Home Indemnity case is clearly consistent with the purposes for which summary judgment was intended. No injustice can be claimed by one whose motion for summary judgment is improperly denied where such party has had his day in court.

██ Turning to the testimony of Polakoff and defendant relating to the merits of the controversy we find clear and convincing evidence that the former had acted with authority to purchase the goods. All negotiations and conversations were conducted on behalf of defendant through Polakoff. The only contact defendant had with plaintiff, according to his own testimony, was a telephone conversation in April, 1963 when he spoke to a secretary in plaintiff's office notifying her that he was returning some of the goods. Defendant at no time complained that Polakoff had exceeded his authority, express or implied, with respect to the purchase of the merchandise. Defendant entrusted Polakoff with a purchase order unlimited as to quantity, and allowed Polakoff to select the goods, subject only to the limitation that the goods be selected from the list shown defendant which had been issued by Stein. Having allowed Polakoff to negotiate the purchase of the parts, and failing to protest directly to plaintiff that Polakoff may have exceeded his authority, defendant is bound by the acts and statements of Polakoff with respect to the negotiations, agreements and purchases from plaintiff.

The remaining question for consideration is the affirmative defense of "sale and return" urged by defendant. The question presented is whether plaintiff, by failing to reply to the allegations set forth in defendant's answer, admitted the matters therein contained. Section 32 of the Civil Practice Act (Ill Rev

379

Stats 1963, c 110, § 32) provides in part that ". . . if new matter by way of defense is pleaded in the answer, a reply shall be filed by the plaintiff." Section 40(2) of the Practice Act (Ill Rev Stats 1963, c 110, § 40(2)) provides that ". . . every allegation . . . not explicitly denied is admitted."

■ Plaintiff's complaint affirmatively averred sale of the goods, and that there was an account stated between the parties. Defendant claimed in his amended answer that the goods were not purchased outright, but on a sale and return basis. In our opinion such allegation did not allege new matter, but was merely a denial that there had in fact been an unconditional sale. The complaint must be treated as being equivalent to a denial of the affirmative defense of sale and return, and no further negation by way of reply was necessary. In Riddle v. La Salle Nat. Bank, 34 Ill App 2d 116, 180 NE2d 719 (1962) plaintiff had pleaded indebtedness and consideration on a promissory note. Defendants alleged no indebtedness and lack of consideration. No reply was filed by plaintiffs, and defendants' contention that the defenses were admitted was rejected.

■ On the other hand, were we to hold that the matters alleged in defendant's amended answer did require a reply, defendant is estopped from now urging that his affirmative defense has been admitted. When defendant moved that plaintiff's motion for summary judgment be denied, he stated that factual questions were presented with respect to the issue whether the agreement between the parties was one of sale and return. The court sustained his position in denying the motion for summary judgment. The cause proceeded to trial and the issues created by the pleadings were fully heard. Having thus proceeded to trial as though his adversary's pleadings joined issue defendant must be deemed to have waived his adver-

380

sary's failure to plead. In re Estate of Marsh, 31 Ill App2d 101, 175 NE2d 633 (1961).

■ ■ We find that there is an absence of proof that the parties contemplated a sale and return arrangement. The evidence established that plaintiff, pursuant to the purchase order issued by defendant, sold certain merchandise to him as selected by Polakoff, and that invoices were duly sent to the defendant covering such goods.

There is nothing in the record to indicate that defendant had a contractual right to return any of the goods sold and delivered to him by plaintiff. As to those items returned, plaintiff cannot recover. But defendant's efforts to return any goods, and the fact that some were returned and accepted by plaintiff does not affect defendant's liability to pay for those parts delivered to him which have not been returned.

For the reasons stated the judgment of the trial court is reversed and the cause remanded for the sole purpose of ascertaining the amount and value of the merchandise delivered and not returned.

Reversed and remanded with directions.

BURMAN, P. J. and MURPHY, J., concur.