CHALET FORD, INC., Plaintiff-Appellee, *v.* RED TOP PARKING, INC., Defendant-Appellant.

First District (5th Division)   No. 77-1240

Opinion filed July 7, 1978.

Greenbaum & Leavitt, of Chicago, for appellant.

Van Emden, Busch & Van Emden, of Chicago (George J. Van Emden, of counsel), for appellee.

Mr. JUSTICE MEJDA delivered the opinion of the court:

Plaintiff, Chalet Ford, Inc., brought this action in the circuit court of Cook County, alleging that defendant, Red Top Parking, Inc., was liable for damages resulting from the loss of plaintiff's automobile which was stolen from a parking facility operated by defendant. The case was tried without a jury, and judgment was entered in favor of plaintiff. On appeal, defendant contends that no bailment existed between plaintiff and defendant, the relationship being solely for the use of a parking space owned by defendant, and that if a bailment had been created it was illegal and therefore unenforceable. We affirm. The facts are as follows.

On the evening of November 27, 1974, Kenneth Hall was employed by plaintiff as a sales manager and had the use of one of plaintiff's automobiles as a demonstrator. Prior to attending a hockey game at the Chicago Stadium, Hall parked the vehicle at a nearby parking lot operated by defendant on the southeast corner of Madison and Wolcott Streets in Chicago. Hall returned to the lot after the game and found that the automobile had been stolen. At trial, both parties stipulated that the loss caused by the theft was $3117.45. The evidence received by the court consisted of an evidentiary deposition of Hall and the testimony of Lewis J. Secor, defendant's president.

Hall testified that on the night his car was stolen, he pulled into the parking lot, left the motor running, paid $4 to the attendant and left. The car keys were left in the possession of the attendant, who was to park the car and, after the game, warm it up and move it close to the exit so that Hall could leave easily. After the game Hall could not find the car and was told by the attendant where the latter had parked it.

Hall had been parking at the lot for approximately four years in attending various hockey games and this was the same procedure he had followed during that time. The same attendants normally worked at the lot and Hall had never received a claim check from them. The actual fee for parking was $2.50, and the remaining $1.50 was paid as a gratuity.

Hall described the lot as being mostly unpaved dirt, with no building on it and with some lighting. He recalled signs identifying the lot and agreed that there was also a sign which read: "Attendants have no authority to accept keys." Hall did not recall any sign saying that the

attendants would warm up cars, but had seen other cars being warmed up in the same way his was and agreed with the characterization that it was a "reasonably common practice." Hall said he had never informed defendant's management of the tipping and warm-up practice and also stated he had never been informed that defendant would not sanction the practice.

Secor testified that defendant owns several lots in the stadium area. Signs are posted on the lots, ranging in size from 4 by 4 feet to 4 by 8 feet, some of which read, "Park and lock, attendant not authorized to accept keys," while others identify special parking rates and carry the words "Park and lock only." Secor stated that it is a rule that his employees are not allowed to accept keys and that those rules are posted in his office where the employees check in and out.

Each parking lot has a manager whose function it is to collect money from customers as they drive in, while other attendants direct the cars into the spaces. The lot in question holds 200 cars, Secor testified, and other attendants may assist the manager in collecting the money, although the manager would still be accepting the payments from almost all of the patrons. In addition to the lot managers, Secor has two managers, subordinate to him, who ride around in security cars to make sure each lot is run correctly.

After reading Hall's deposition and receiving Secor's testimony, the trial court entered judgment in favor of plaintiff for $3117.45, and defendant appealed.

OPINION

■■ ■ Defendant first contends that no bailment relationship existed between the parties. A bailment is created by an agreement, whether express or implied, and requires both delivery by the bailor and acceptance by the bailee so that the bailee may exercise exclusive control of the bailed property. (*Wall v. Airport Parking Co.* (1969), 41 Ill. 2d 506, 244 N.E.2d 190.) In the instant case, plaintiff's car and car keys were left with an attendant in one of defendant's parking lots. Based upon a pattern established over a period of four years, the attendant was to park the car in defendant's lot while Hall, the driver, attended a hockey game. After the game the attendant was to return the car to Hall. Clearly, a bailment was created. The sole question to be resolved is whether that bailment is binding upon the defendant, the owner of the lot.

■■ Defendant can be bound by the terms of the bailment only if the attendant had the authority to enter into such an agreement. The authority may be actual or apparent, actual being either expressed or implied. (3 Am. Jur. 2d *Agency* §69 (1962).) The signs posted at the parking lot, stating that the lot was a park and lock facility and that attendants had no

authority to accept keys, indicate that the attendant did not have actual authority, either expressed or implied, to create a bailment on behalf of defendant. (*Cf. Wing v. Lederer* (1966), 77 Ill. App. 2d 413, 222 N.E.2d 535.) However, plaintiff maintains that the circumstances surrounding the acts of Hall and the attendant lead to the conclusion that the attendant had apparent authority to create the bailment.

■■ Apparent authority is based upon the words and acts of a principal to a third party. (*Lawcock v. United States Trotting Association* (1965), 55 Ill. App. 2d 211, 204 N.E.2d 802.) Circumstantial evidence of a principal's behavior in regard to his agent's acts can ratify the agent's authority to perform those acts (*O'Connor v. Village of Palos Park* (1975), 31 Ill. App. 3d 528, 333 N.E.2d 276), and if the circumstances imply that an alleged principal had knowledge of the agent's acts, a prima facie case of agency is established. *Cf. City of Evanston v. Piotrowicz* (1960), 20 Ill. 2d 512, 170 N.E.2d 569.

The record of the instant case shows that at various times for approximately four years Hall parked at defendant's parking facility, that Hall had regularly left his keys plus an additional $1.50 with an attendant at the parking lot, and that the attendant would park Hall's car and later warm up the car and move it close to an exit for Hall's convenience on his return. During those four years, the same attendants were generally at the parking lot, regularly performing acts in contradiction of the signs that stated they had no authority to do so. Although a person dealing with an agent has a duty to use reasonable diligence to determine the scope of an agent's authority (*Lawcock v. United States Trotting Association*), it was reasonable under the circumstances here for Hall to believe that the attendant's actions were authorized and that the signs were disregarded by those who ran the parking lot, as well as by its patrons.

■■ Secor testified that defendant's operational policies were in accordance with the signs and that there were managers both at the lots and patrolling all the parking facilities to see that those policies were enforced. Furthermore, Secor testified that only the lot managers were authorized to collect money from patrons although in a few instances other attendants assisted the manager in that function. Defendant cannot insulate itself from liability arising from its employees' acts by claiming those acts were against its policies when its regular practices contradicted its policies. Defendant's business was operated in such a way that it knew, or should have known, that the attendants at its lots did not act in accordance with their employer's policies. Defendant's failure to repudiate the actions of its employees thus constituted a ratification of the attendants' acts and defendant is bound by them. *Cf. Del Bianco & Associates, Inc. v. Adam* (1972), 6 Ill. App. 3d 286, 285 N.E.2d 480, *cert. denied* (1973), 410 U.S. 955, 35 L. Ed. 2d 688, 93 S. Ct. 1421; *Croy*

*Manufacturing Co. v. Marks* (1965), 62 Ill. App. 2d 373, 210 N.E.2d 814.

■■■ The facts in the record are not in dispute. The parties merely maintain that those facts support opposite conclusions. In such case, the trial court's decision will be overturned only if the facts do not sustain the court's judgment. (*Alan Drey Company, Inc. v. Generation, Inc.* (1974), 22 Ill. App. 3d 611, 317 N.E.2d 673; *Castle Concrete Co. v. Fleetwood Associates, Inc.* (1971), 131 Ill. App. 2d 289, 268 N.E.2d 474.) The trial court's conclusion that the attendant had the authority to bind defendant is amply supported by the record and a bailment did therefore exist between plaintiff and defendant. Plaintiff established its prima facie case and raised a presumption of defendant's negligence by showing that the car had been left with the attendant in good condition and was not returned upon Hall's demand. (*Clark v. Fields* (1967), 37 Ill. 2d 583, 229 N.E. 2d 676; *James Coates Motors, Inc. v. Avis Rent-A-Car System, Inc.* (1974), 19 Ill. App. 3d 919, 312 N.E.2d 291.) The mere presence of the signs on the parking lot does not in itself relieve defendant of liability for its negligence (*Weinberger v. Werremeyer* (1922), 224 Ill. App. 217), and without testimony on behalf of defendant that the theft was not due to its own negligence the presumption of negligence is not overcome. (*Byalos v. Matheson* (1927), 328 Ill. 269, 159 N.E. 242.) We therefore conclude that the trial court's finding that defendant is liable for damages resulting from the theft of plaintiff's automobile was proper.

Defendant also contends that if a bailment was created it was unenforceable because it violates section 29A—1 of the Criminal Code of 1961 (Ill. Rev. Stat. 1975, ch. 38, par. 29A—1), which reads:

> "A person commits commercial bribery when he confers, or offers or agrees to confer, any benefit upon an employee, agent or fiduciary without the consent of the latter's employer or principal, with intent to influence his conduct in relation to his employer's or principal's affairs."

In light of our finding that the attendant had apparent authority to accept Hall's car keys as well as Hall's car, we need not consider whether the additional $1.50 paid to the attendant was a bribe. However, we note the transaction does not fall within the meaning of "commercial bribery" as defined by the statute.

Therefore, for the foregoing reasons, the judgment of the trial court is affirmed.

Affirmed.

SULLIVAN, P. J., and WILSON, J., concur.