**Elwood NELSON, Plaintiff and Appellant,**

v.

**SCHROEDER AEROSPORTS, INC., d/b/a Sky Haven Airpark, Inc., Defendant and Respondent.**

**No. 12623.**

Supreme Court of South Dakota.

Submitted on Briefs May 15, 1979.

Decided June 21, 1979.

Timothy J. Nimick of Woods, Fuller, Shultz & Smith, Sioux Falls, for plaintiff and appellant.

Gary J. Pashby of Boyce, Murphy, McDowell & Greenfield, Sioux Falls, for defendant and respondent.

DUNN, Justice.

This case involves an action to recover for damages sustained by an aircraft owned by Elwood Nelson (plaintiff) during a windstorm in the fall of 1977 while the aircraft was parked at the airport facility owned and operated by Schroeder Aerosports, Inc. (defendant). The trial court directed a verdict for defendant. We affirm.

The nature of defendant's business includes rental of parking spaces to aircraft owners. These parking spaces contain tie-down facilities to secure the aircraft. In February of 1977, plaintiff purchased an aircraft for $3,000 and arranged to have it flown to defendant's airport facility. The parties entered into an informal agreement whereby plaintiff rented a parking space for his aircraft from defendant for $10 per month. During a violent storm on September 8, 1977, plaintiff's aircraft was turned over on its top by high winds and damaged in an amount approaching $2,500.

Upon our review of the trial court's directed verdict for defendant, we note that trial court rulings and decisions are presumed to be correct, and this court will not seek reasons to reverse. *Lytle v. Morgan*, 270 N.W.2d 359 (S.D.1978); *Shaffer v. Honeywell, Inc.*, 249 N.W.2d 251 (S.D. 1976); *Custer County Board of Education v. State Commission on Elementary and Secondary Education*, 86 S.D. 215, 193 N.W.2d 586 (1972). A motion for directed verdict raises a question of the legal sufficiency of the evidence to sustain a verdict against the moving party. It is not the court's function to weigh the evidence but rather to decide if there is any substantial credible evidence to support a verdict against the moving party after viewing the evidence in the

light most favorable to the nonmoving party. *Corey v. Kocer*, 86 S.D. 221, 193 N.W.2d 589 (1972); *Waggoner v. Midwestern Development, Inc.*, 83 S.D. 57, 154 N.W.2d 803 (1967); *Block v. McVay*, 80 S.D. 469, 126 N.W.2d 808 (1964); *Snell v. Watts*, 77 S.D. 534, 95 N.W.2d 453 (1959); *Hansen v. Isaak*, 70 S.D. 529, 19 N.W.2d 521 (1945).

 Plaintiff argues that a bailor-bailee relationship arose between the parties in that a prima facie case was presented for the existence of a bailment.* Plaintiff correctly states the elements for a showing of such a prima facie case, to wit: (1) the delivery of the property to defendant, (2) its value, (3) defendant's failure to return the property in good condition upon demand, and (4) the damages resulting from the failure to deliver. *Johnson v. Hanna*, 78 S.D. 324, 101 N.W.2d 830 (1960); *Carty v. Lemmon Auto Co.*, 72 S.D. 559, 37 N.W.2d 454 (1949). Plaintiff fails, however, to recognize that the delivery contemplated above for the existence of a bailment turns on whether possession and control of the property is retained by the owner or is delivered to defendant. *Feay v. Miller*, 72 S.D. 185, 31 N.W.2d 328 (1948). To constitute sufficient delivery, the generally recognized test is whether there is a full transfer of the property so as to amount to relinquishment of exclusive possession, control and dominion over the property for the duration of the relationship so that the person to whom delivery is made can exclude the possession of the owner and all other persons within the limits of the agreement between the parties. *Chalet Ford, Inc. v. Red Top Parking, Inc.*, 62 Ill.App.3d 270, 19 Ill.Dec. 573, 379 N.E.2d 88 (1978); *Sledge v. Bruce*, 45 Ill.App.3d 210, 4 Ill.Dec. 36, 359 N.E.2d 869 (1977); *Orton v. Markward & Karafilis, Inc.*, 83 Mich.App. 548, 269 N.W.2d 219 (1978); 8 Am.Jur.2d Bailments § 20, pp. 925–926 (1963).

The record reveals that after the parties reached an informal agreement regarding the rental of a space to park the aircraft, plaintiff tied down his aircraft to the space designated by defendant. The keys to the plane remained with plaintiff. Plaintiff subsequently gave a third party permission to fly the aircraft, and fuel was purchased in April of 1977, presumably for such flight. In June or July of 1977, defendant attempted to contact plaintiff to request permission to move plaintiff's aircraft to another parking space due to federal and state regulations governing the proximity of parked aircraft to airport runways. Defendant was unable to contact plaintiff because plaintiff's telephone was disconnected. Defendant's employees then moved the aircraft to another tie-down space and tied the aircraft down. On August 27, 1977, the airport was being mowed in preparation for an air show, and aircraft in parking spaces were untied and moved in order to facilitate such mowing. An attempt was made to untie and move plaintiff's aircraft but the tie-down knots were so secure that the aircraft was not disturbed and workers had to mow around the aircraft. On September 8, 1977, after the Weather Bureau issued a storm warning, defendant's employee checked all aircraft in tie-down spaces in case owners had failed to properly secure their aircraft. The employee testified that he checked plaintiff's aircraft and that the tie-downs were securely tied. Before the storm hit the airport, other aircraft owners had driven to the airport to check on their aircraft, but plaintiff did not check his plane prior to the storm. The high winds from the storm turned plaintiff's plane on its top, ripped a panel off the side of a nearby building, and snapped off some telephone poles close to the airport. The record reflects that plaintiff's aircraft was not moved between the time of the mowing of August 27, 1977, and the time of the storm.

---

* In support of his proposition, plaintiff cites two cases with virtually identical fact situations as persuasive authority, to wit: *Naxera v. Wathan*, 159 N.W.2d 513 (Iowa 1968), and *Alamo Airways, Inc., v. Benum*, 78 Nev. 384, 374 P.2d 684. In both cases, however, the parties stipulated that their agreements to store aircraft constituted bailments for hire and that the only question remaining for the courts was the negligence of the airport operators. We are faced with the bailment question absent such stipulation; therefore, the cases cited by plaintiff are not persuasive authority.

The evidence shows that plaintiff kept the keys to the aircraft and gave a third party permission to fly the aircraft. This exhibits plaintiff's retained control over the aircraft. Likewise, defendant's lack of control is reflected in its attempts to contact plaintiff for permission to move the aircraft to a different parking space pursuant to government regulations. The general lack of control by defendant is further reflected in the fact that other aircraft owners made an effort to come out to the airport to check their tie-downs prior to the storm. In fact, the temporary control exerted by defendant resulted in tie-down knots so securely tied that men mowing the airport could not untie the plane to accomplish their mowing.

We must conclude that plaintiff did not relinquish exclusive possession, control and dominion over the aircraft. We hold that under the circumstances present in this case, where plaintiff's aircraft was placed in the airport parking or tie-down space and defendant was not given and did not assert exclusive control over the aircraft, there was no delivery giving rise to a bailor-bailee relationship and only a lease relating to the space occupied by the aircraft was created as opposed to a bailment of the aircraft into the hands of defendant. See, *Simons v. First National Bank of Denver*, 30 Colo. App. 260, 491 P.2d 602 (1971); 2A C.J.S. Aeronautics & Aerospace § 87, (1972). The trial court considered the legal sufficiency of the evidence and decided that there was no substantial credible evidence to support a verdict against defendant. Therefore, the trial court properly granted defendant's motion for directed verdict and dismissed the action upon its merits.

The judgment of the trial court is affirmed.

All the Justices concur.

