PAUL PETERS, d/b/a Stereotronic Industries, Inc., Plaintiff-Appellee, *v.* UNITED VAN LINES, INC., *et al.*, Defendants-Appellants.

Second District   No. 79-238

Opinion filed March 17, 1980.

E. Bryan Dunningan, of Walter M. Ketchum, Ltd., of Chicago, for appellants.

Richard J. Smith, of Sullivan, Smith & Hauser, Ltd., of Waukegan, for appellee.

Mr. JUSTICE LINDBERG delivered the opinion of the court:

Defendants-appellants, United Van Lines, Inc., and Three Way Van Lines Company, Inc., appeal from a judgment by the Circuit Court of Lake County entered after a bench trial in favor of plaintiff-appellee, Paul Peters, for $3,400 plus costs.

Plaintiff's complaint alleged that defendants were responsible for the loss during delivery of certain electronic equipment. Defendants answered and offered the affirmative defense that plaintiff had failed to file a written notice of claim with either defendant in accordance with

section 6 of the bill of lading which provided, among other things, that as a condition precedent to recovery, a claim must be filed in writing with the carrier within nine months after a reasonable time for delivery has elapsed. Plaintiff, in his answer to the affirmative defense, alleged, first, that within nine months, namely, on the date of delivery, defendant's agent, in writing, acknowledged that certain goods were missing from the truck and second, that at no time has the carrier disallowed the claim.

Defendants filed a motion for summary judgment again on the theory that they received no written claim with regard to the alleged loss which complied with the terms of section 6 of the bill of lading and Rule 19 of the Tariff Regulations of the Interstate Commerce Commission. Plaintiff countered with a response alleging that there was a question of fact as to when he first sent a written communication to the defendants. The trial court found that there was a controversy regarding the facts and therefore it denied the motion for summary judgment.[1]

On August 2, 1974, defendant carrier United Van Lines entered into a contract with Altec, the shipper, to move certain electronic equipment from Orange County, California, to Zion, Illinois. The shipment was delivered to plaintiff as consignee on August 12, 1974. When the goods were unloaded, the uncontradicted testimony is that four items of electronic equipment were missing. Plaintiff initially refused shipment and instructed defendant to reload his truck. Plaintiff testified that after he described the modules to the truck driver, the driver stated that he had seen them on the truck he removed the goods from. Plaintiff also testified that the driver made numerous telephone calls in an attempt to locate the missing equipment. However, Mr. Tom Brown, an employee of United Van Lines, testified that there was no indication in their files that the driver called United Van Lines.

Plaintiff further stated that the driver assured him that if he paid the $158.63 freight bill and signed the bill of lading, Three Way Van Lines would see that he received the four missing pieces. Upon this representation, plaintiff paid the charges and accepted shipment. On the descriptive inventory form, supplied by the driver, there appears a notation that the four items are "missing" and the signatures of the driver, Denny Etter, and the plaintiff. Brown testified that the inventory sheet was received on August 23, 1974, but that no action was taken with respect to the missing merchandise; he also testified that there is no

---

[1] Defendants, as an alternative remedy, are seeking a reversal of this denial of their motion for summary judgment. However, it is well established that even "if a motion for summary judgment is improperly denied the error is not reversible for the result becomes merged in the subsequent trial." (*Home Indemnity Co. v. Reynolds & Co.* (1963), 38 Ill. App. 2d 358, 367, 187 N.E.2d 274, 278; see also *Croy Manufacturing Co. v. Marks* (1965), 62 Ill. App. 2d 373, 210 N.E.2d 814.) Thus this opinion will not further address the denial of defendants' motion for summary judgment.

procedure embarked upon once such a notation is made on shipping documents.

Plaintiff and his wife, Beverly Peters, both testified that the next contact with United ·Van Lines or Three Way Van Lines was approximately 60 days later, when an additional bill for $53 was received. Plaintiff also stated that in the period from September 1974 to September 1976 he made approximately six telephone calls to defendants. In response to the subsequent billing, Mr. Peters testified that he wrote a letter requesting an explanation of the additional charge and the location of the four missing modules. Mrs. Peters testified that she sent the letter sometime in late September or early October of 1974; Mr. Peters testified that the letter was sent less than 30 days after the first bill came. Both Mr. and Mrs. Peters testified that it was customary to keep copies of correspondence. Although Mr. Peters admitted that he did not have a copy of the letter, he suggested that it had been destroyed with some of his other records in a fire at the plant.

The alleged first letter was referred to in a letter written by Mrs. Peters on June 8, 1976. The June letter, among other things, refers to the notation on the descriptive inventory sheet and states that the four items are "STILL MISSING." Brown admitted that Three Way Van Lines received the copy of the June letter, but stated that there is nothing in their file to indicate that either United Van Lines or Three Way Van Lines had received a claim on this shipment.

The trial testimony of Mr. and Mrs. Peters is in partial conflict with testimony contained in earlier depositions. In his deposition, Mr. Peters stated, in essence, that he was not aware of any written demands on the defendants with regard to this transaction; that he couldn't remember if there was any writing other than the letter by his wife dated June 1976; and that he didn't know if at any time he had made a written claim for the missing items. In her deposition, Mrs. Peters testified that she couldn't recall when she wrote to the company for the first time and that she didn't know when she wrote the first letter what it said, to whom it was sent, or whether the records were destroyed in the fire.

In a memorandum opinion, the trial court found that plaintiff advised defendants in writing shortly after the September 24, 1974, billing that the items noted as missing on the delivery inventory were still missing. In sum, the trial court found that this and other communications to the defendants gave or should have given them actual knowledge that plaintiff was holding them responsible for specific goods lost in specific shipment. The court further found that the defendants were not prejudiced by plaintiff's failure to specify a dollar amount of the claim.

Three issues are presented by this appeal: (1) whether the trial court erred in determining that appropriate notice of the missing items was

submitted by plaintiff to defendants, (2) whether the conduct of defendants estops them from relying on the claim requirement, and (3) whether plaintiff's cause of action is barred by the statute of limitations.

## I.

Section six of the bill of lading for the shipment in question provides as follows:

> "As a condition precedent to recovery, a claim for any loss or damage, injury or delay, must be filed in writing with carrier within nine (9) months after delivery to consignee as shown on face hereof, or in case of failure to make delivery, then within nine (9) months after a reasonable time for delivery has elapsed; and suit must be instituted against carrier within two (2) years and one (1) day from the date when notice in writing is given by carrier to the claimant that carrier has disallowed the claim or any part or parts thereof specified in the notice. Where a claim is not filed or suit is not instituted thereon in accordance with the foregoing provisions, carrier shall not be liable and such a claim will not be paid."

Rule 19 of the Interstate Commerce Commission Tariff covering this shipment contains a similar notice of claim provision and further provides that notations of shortages contained on delivery documents will not, standing alone, meet the minimum claim filing requirements.

■■ Generally, any written document, however informal, which indicates a claim for damages is asserted, and identifies the shipment, will be adequate to satisfy the claim requirement. (*Atchison, Topeka, & Santa Fe Ry. Co. v. Littleton Leasing and Investment Co.* (10th Cir. 1978), 582 F.2d 1237, 1240; *Georgia, Florida, & Alabama Ry. Co. v. Blish Milling Co.* (1916), 241 U.S. 190, 60 L. Ed. 948, 36 S. Ct. 541.) The leading Illinois case on this issue is *Berg v. Schreiber* (1950), 405 Ill. 528, 92 N.E.2d 88. In *Berg*, plaintiff had purchased a shipment of jeep parts to be delivered via defendant's truck lines. No written claim was made prior to the commencement of the suit. However, plaintiff argued that a list of the damaged parts furnished by defendant's insurance adjuster to plaintiff, a copy of which was given back to the plaintiff, was sufficient to constitute compliance with the statutory provision. In rejecting that argument the court stated:

> "Under the Interstate Commerce Act and defendants' bill of lading it was incumbent upon the plaintiff to make a claim in writing, and to do so within the time fixed by law. The plaintiff made no claim whatsoever in writing, but simply gave a list to the defendants' insurance adjuster, and even though the claimant had prepared and filed a document similar to that prepared by the adjuster it would not be sufficient in order to comply with the

provisions of Interstate Commerce Act. The document said to constitute a claim gives only the number of items in figures, and those delivered in good condition, and those rejected. There is no price or value of the articles; no statement of whether it is a total or a partial loss; no dates other than the date of shipment, and nothing which would comply with the ordinary requirements of a claim for loss of goods or damages to the same." (405 Ill. 528, 532, 92 N.E.2d 88, 90.)

Accordingly, the court held that, inasmuch as the Interstate Commerce Act requires a claim to be made in writing, the absence of such a claim being made within nine months barred plaintiff from bringing and maintaining his action.

In the instant case, the trial court found that plaintiff sent defendant a letter prior to the June 1976 letter contained in the record and that this first letter, taken in conjunction with oral communications between the parties, satisfied the claim requirement. We need not determine if the trial court's finding as to the existence of this first letter is against the manifest weight of the evidence. We hold that even if this disputed letter was sent and received it did not constitute a notice of claim. According to plaintiff and his wife, the missing first letter contained the same basic information as the subsequent June letter, *i.e.*, it stated that freight charges had been paid and that four items were still missing as noted in the delivery inventory. There was no actual claim or demand for any specific action on the part of the carrier. In *Littleton Leasing* the court was faced with a similar situation in that the letters sent to the shipper were primarily replies to requests for freight charges rather than damage claims. The court reasoned:

> "Although it is not necessary that there be a formal demand for damages in the written claim, the reasonable inferences to be drawn from correspondence, even in this light, are that these letters do not give notice of a damage claim by the shipper. It must be remembered that the purpose of the notice requirement is not to escape liability but to facilitate prompt investigation." (582 F.2d 1237, 1240.)

The court concluded that the carrier was not provided adequate notice allowing it to initiate an investigation. We believe that the same conclusion is called for in the case at bar.

■ Plaintiff cites the case of *Hopper Paper Co. v. Baltimore & Ohio R.R. Co.* (7th Cir. 1949), 178 F.2d 179, for the proposition that where a carrier has full knowledge of a loss, a formal claim is unnecessary. In *Hopper* the defendant-carrier was the first party to know of the loss and acknowledged the loss by telegram. The court found that since the

defendant had as much or more knowledge of the damage in question as the plaintiff, formal notice would be superfluous. The *Hopper* decision has been widely criticized (see, for example, *Insurance Co. of North America v. Newtowne Mfg. Co.* (1st Cir. 1951), 187 F.2d 675) and generally limited to its particular set of facts. (*Henry Pratt Co. v. Stor Dor Freight Systems, Inc.* (N.D. Ill. 1975), 416 F. Supp. 714.) In the instant case there was no formal acknowledgment of the loss by the carrier beyond the notation on the delivery inventory. It cannot be said, as was the case in *Hopper*, that the defendants had as much knowledge of the claim as did plaintiff. In sum we do not find the *Hopper* exception to the requirement of a written claim to be controlling of this case.

## II.

There is, however, another recognized exception to the written claim requirement when "the carrier's conduct in some way induced the claimant's failure to file." (*Perini-North River Associates v. Chesapeake & Ohio Ry. Co.* (3d Cir. 1977), 562 F.2d 269, 272; see also *Lehigh Valley R. Co. v. State of Russia* (2d Cir. 1927), 21 F.2d 396, 404; and *Cordingley v. Allied Van Lines, Inc.* (9th Cir. 1977), 563 F.2d 960, 963 n.6.) In *Perini-North River Associates* a clerk of the carrier erroneously told the plaintiff that it need not file a claim since one had already been filed. Further the carrier failed to follow its normal practice of forwarding claim forms and copies of the damage report to the consignee. After analyzing these and other factors, the court discussed the concept of estoppel in the context of carrier claim cases:

> "Local rules of estoppel may not be applied so as to thwart the purpose of federal statutes. [Citation.] The converse is also true: the doctrine should be used when it enhances the statutory purpose. We conclude that it may appropriately be applied here.
> * * * The filing requirement helps the consignee, since it facilitates prompt investigation of its claim. Realistically, however, the requirement benefits the carrier by providing a reliable record of potential liabilities. [Citation.] Certainly the carrier gains if the consignee forfeits his cause of action through an inexcusable failure to file. [Citation.]" (562 F.2d 269, 273-74.)

In light of the potential benefit to the carrier from a failure of the consignee to file a claim, the court held that the carrier's misleading of the consignee estopped the carrier from relying on the claim requirement to bar recovery.

■■ We believe that the doctrine of estoppel should also be invoked under the facts of the instant case. The testimony is uncontradicted that plaintiff initially wanted to refuse delivery when he discovered that items

were missing. The driver, an agent of the carrier, induced plaintiff to accept delivery and pay the freight charges upon the representations that he knew where the missing goods were located and that they would be forthcoming. Thus it is understandable why plaintiff failed to file a formal claim; he instead sought to remind the carrier that the goods were still missing and had not been located and delivered as promised. If a party's conduct has reasonably induced another to follow a course of action that otherwise would not have been followed and which turns out to be to the latter's detriment, an estoppel will arise to prevent injustice. (*Sabath v. Morris Handler Co.* (1968), 102 Ill. App. 2d 218, 243 N.E.2d 723.) Under this principle, we hold that the defendants are estopped from relying on the claims requirements in the bill of lading and the Tariff.

### III.

Finally, defendants argue that plaintiff's cause of action is barred by the two-year-and-one-day statute of limitations contained in section 6 of the bill of lading. However, the above discussion of estoppel is equally appropriate to enforcement of statutes of limitations. (*Salloum Foods & Liquor, Inc. v. Parliament Insurance Co.* (1979), 69 Ill. App. 3d 422, 388 N.E.2d 23.) Moreover, section 6 refers to filing suit within two years and one day "from the date when notice in writing is given by the carrier to the claimant that the carrier has disallowed the claim." In the instant case, the carrier has given no such notice of disallowal, and thus we believe the limitations period in section 6 is not controlling.

For the foregoing reasons the judgment of the Circuit Court of Lake County is affirmed.

Affirmed.

SEIDENFELD, P. J., and NASH, J., concur.