Michael J. Stock and Amanda Rose Stock, Plaintiffs-Appellees-Cross-Appellants, v. Reliance Insurance Company, Defendant-Appellant, and Pekin Insurance Company, Defendant-Cross-Appellee.

Gen. No. 67–61.

Fifth District.

May 31, 1968.

8

Clausen, Hirsh, Miller & Gorman, of Chicago, and Murray & Stephens, of Centralia (Jacob T. Pincus, John W. Morrison, and James T. Ferrini, of counsel), for appellants.

■■■■■■■■■■

John E. Jacobsen, Craig & Craig, of Mt. Vernon, and Wham & Wham, of Centralia, for appellees.

GOLDENHERSH, J.

This is an action for declaratory judgment brought by plaintiffs, Michael J. Stock, hereafter referred to as Stock, and Amanda Rose Stock, to determine the rights and liabilities of the parties under policies of insurance issued by the defendants, Reliance Insurance Company, hereafter called Reliance, and Pekin Insurance Company, hereafter called Pekin, and to recover monies allegedly due plaintiffs under the policies. The Circuit Court of Marion County, after trial without a jury, entered judgment in favor of plaintiffs and against Reliance in the amount of $6,066.13, held that there was no valid contract of insurance between plaintiffs and Pekin, and entered judgment for Pekin. Reliance appeals from the judgment, and plaintiffs have cross-appealed.

On November 23, 1963, Reliance had issued its "homeowner's" policy to plaintiffs providing various coverages at premises described as 10 Phyllis Drive, Centralia.

Plaintiffs, in order to complete the construction of a dwelling on the premises, borrowed money from William H. Roffman, hereafter called Roffman. To secure the loan, the property was conveyed to Roffman, his wife and son, and on February 15, 1964, they, as vendors, entered into a contract for deed with the plaintiffs as vendees. On that date an endorsement was made to the Reliance policy naming the Roffmans as "additional assureds."

As amended by endorsement dated February 1, 1965, the Reliance policy provided the following coverages: for the dwelling house, $20,000; for personal property, $8,000; for additional living expenses, $2,000.

The evidence shows that at the time plaintiffs obtained the loan from the Roffmans it was estimated it would

10

take a year to complete construction of the dwelling. Plaintiffs, at the suggestion of Charles Rude, Jr., of the Rude Insurance Agency, procured a builders' risk policy to protect the interests of the Roffmans. This policy was issued by Pekin, through the Rude Agency. While this policy was in force, the building suffered water damage. A claim was presented, and was denied by Pekin. Plaintiff, Stock, was much perturbed by the denial of liability, and told Charles Rude, Jr. that he did not think "Pekin was too good a company," but nevertheless, did not cancel the policy, and did not at any time direct Mr. Rude to refrain from placing other insurance with Pekin. The builders' risk policy expired in November, 1964.

The testimony shows that Roffman, over a period of some years, had purchased real estate contracts, and insurance, through the Rude Agency. He had instructed the agency that it was never to allow a policy of insurance to expire, or be cancelled, on any property on which he had a loan. Rude had been instructed that when the property in question qualified, he was to obtain a "homeowner's" type policy, since that type afforded a greater range of protection at a low premium.

The contract for deed contains the following provision:

> "The Purchasers shall also procure insurance on the building or buildings now on said lot, or that shall hereafter be erected on said lot for a sum at least equal to the amount due on this contract on the date of its execution, in some good company or companies to be selected by the Sellers, such insurance to be for the benefit and for the further security of the Sellers . . ."

At no time did the indebtedness exceed the amount of insurance provided on the dwelling in the Reliance policy.

Charles Rude, Jr. testified that he was a real estate and insurance broker. During the period in question he represented several insurance companies, one of which was Pekin. On February 15, 1965, he prepared and submitted to Pekin an application for a "homeowner's" policy. This was done because of Roffman's standing orders with respect to insurance. There was no specific request for the insurance by either Stock or Roffman, and neither of them signed the application. At that time Rude did not know of the Reliance policy, and the application states there was no other insurance in force. The policy shows Charles H. Rude, Jr. to be the issuing agent.

Mr. Rude testified that under the rules and regulations of the Illinois Department of Insurance governing the writing of "homeowner's" policies, he could not have written the policy in the name of the Roffmans without naming the plaintiffs as insureds, because Roffman did not live in the house. It was his intention to insure the interests of both the Roffmans and the plaintiffs.

He testified that in the ordinary course of doing business with Pekin, policies had been issued without signed applications.

Mr. Rude testified further that when the policy was issued he delivered a copy to Roffman, and kept Stock's copy, intending to give it to him when he came in to make a payment.

The Pekin policy provides the following coverages: for the dwelling, $15,000; unscheduled personal property, $6,000; and additional living expenses, $1,500. Plaintiff, Michael J. Stock is the named insured, and William H. Roffman, described as "titleholder" is named as "additional insured."

On March 1, 1965, a fire occurred, destroying the dwelling and its contents. Plaintiffs did not learn of the issuance of the Pekin policy until after the fire.

Shortly after the loss, plaintiffs, Roffmans, and a representative of General Adjustment Bureau, Inc., acting

12

for both defendants, executed a document captioned "Agreement as to actual cash value and amount of loss" in which it is agreed that the losses resulting from the fire are in the following amounts: the dwelling, $21,000; contents, $10,000; additional living expenses, $938, a total of $31,938. The agreement contains a provision to the effect that by agreeing upon the amount of the loss defendants do not promise to pay any sum whatsoever, the agreement creates no liability, and the parties do not thereby waive any rights they might otherwise have. The parties also executed a separate nonwaiver agreement which provides that by agreeing upon the amounts of the loss the parties waived no rights or defenses.

On the date of the fire plaintiffs owed the Roffmans $13,117.05. Of this amount Reliance and Pekin paid $\frac{4}{7}$ths and $\frac{3}{7}$ths, respectively, being the proportion of the loss that the amount of coverage afforded by each insurer bore to the total amount of insurance in force on the dwelling.

On September 21, 1965, shortly after Pekin paid the Roffmans its proportionate share of the sum due them, the Redeker Agency, successor to the Rude Agency, surrendered the policy for cancellation. On December 3, 1965, Pekin wrote the Redeker Agency advising it that the policy had been cancelled as of September 21, 1965. In the letter it stated, "Since our policy should not have been written and it should have been written, if any, to protect the interest of the mortgagee on a fire policy, we feel that there is an addtional return premium due. . . ."

Plaintiffs' loss was $18,820.95, the difference between $31,938, and the $13,117.05 paid the Roffmans. Reliance tendered plaintiffs $10,754.82, being $\frac{4}{7}$ths of their loss. Pekin refused to pay any portion of plaintiffs' claim. The amount of the judgment entered against Reliance is the difference between the amount tendered plaintiffs and $16,820.95, the sum remaining unexpended under

the policy after deducting the amount which Reliance paid the Roffmans. Assuming affirmance of the judgment, plaintiffs suffer an uncompensated loss of $2,000.

In a comprehensive memorandum in which it reviewed the evidence and made findings of fact, the trial court held that in order for a valid policy of insurance to have been issued to plaintiffs, Rude must have been authorized by plaintiffs, their agent or representative to apply therefor; there was no such authority given Rude either expressly or impliedly, and therefore, there was no valid contract of insurance between plaintiffs and Pekin.

Reliance contends that Pekin issued a valid and binding policy and its liability is limited to ⅘ths of the loss.

Plaintiffs contend that the trial court erred (a) in holding that Pekin was not liable to them under its policy, (b) in rejecting evidence of additional living expenses incurred by reason of defendant's refusal to make prompt payment of the sums due them, (c) in its refusal to award attorneys' fees under the provisions of chapter 73, section 767, Ill Rev Stats 1965, and (d) in refusing to award interest on the sums found to be due.

Pekin contends that (a) there was no contract between it and plaintiffs, (b) there was no binding or valid insurance policy because there was no meeting of the minds of the parties, (c) an insurance contract must be mutually binding upon the parties and since there was no obligation on the part of the plaintiffs, there was none on the part of Pekin, (d) Rude had no authority to apply for a policy for which plaintiffs had not applied and Pekin is not bound by Rude's actions beyond the scope of his authority, (e) the policy was not effectively ratified by plaintiffs, (f) making a claim after loss cannot ratify a policy which was not valid, and (g) ratification could not be effected through a claim handled under a nonwaiver agreement.

■ Assuming the trial court to have correctly found that Rude was not in any manner authorized to apply

14

for insurance on behalf of plaintiffs, we do not find such authority to be essential to plaintiffs' recovery on the policy. From our examination of the authorities we conclude that a contract of insurance made on behalf of an insured, without his knowledge or authority, may be ratified by the insured, even after a loss has occurred, provided the insurer has not meanwhile withdrawn its previous assent. American Surety Co. of New York v. Martinez (Court of Civil Appeals of Texas), 73 SW2d 109; Clower v. Fidelity-Phenix Fire Ins. Co. of New York, 220 Mo App 1112, 296 SW 257; 26 CJ 69; 44 CJS 1091; 29 Am Jur 554; 29A Am Jur 151; see annotations 76 ALR 1174, 1177 and 121 ALR 1428. Although the cases discussed in the ALR annotations, for the most part, involve the issue of whether such ratification, after a loss occurs, affects coverage under a preexisting policy which contains a clause barring other insurance, the opinions recognize the validity of the above stated rule.

■ The evidence shows that plaintiffs gave notice of the loss and made a claim against Pekin promptly upon learning of the existence of the coverage, and there is no evidence that Pekin, at that time, had taken any action which could affect its acceptance of the risk. We need not discuss the effect, if any, of Pekin's attempt, by unilateral action, to convert its "homeowner's" policy to a fire policy covering the mortgagee's interest in the property, nor do we find it significant that plaintiffs' claim against Pekin was handled under a nonwaiver agreement. The efficacy of plaintiffs' act of ratification is not affected by what Pekin did after the claim was presented; only withdrawal of assent prior to plaintiffs' making their claim would serve to avert ratification. Upon the facts shown, we hold that plaintiffs effectively ratified the issuance of the policy.

■ ■ Pekin argues that if it had known of the Reliance policy it would not have accepted the risk. We do not find this contention persuasive in view of its having

15

acted upon an unsigned application prepared by its agent. Assuming misrepresentations in the application, they would not serve to defeat recovery. Lycoming Fire Ins. Co. v. Jackson, 83 Ill 302.

In support of their cross-appeal plaintiffs contend that the trial court erred in excluding evidence of additional living expenses in excess of the amount shown in the agreement fixing the amount of the loss. They argue that the agreement was made in anticipation of prompt payment, and defendants' refusal to pay the sums due caused them to incur additional expense. They further contend that because of the delay in payment of the sums due Roffman, they became liable for, and paid, additional interest on their indebtedness to him.

Plaintiffs do not cite, and we have not found, any authority which would support these contentions, and we hold that the trial court correctly rejected them.

██ We have considered plaintiffs' arguments in support of their claim for allowance of attorneys' fees, and are not prepared to say that the record compels a finding that defendants' conduct in this matter was vexatious, or without reasonable cause. Accordingly, the trial court did not err in its refusal to allow plaintiffs' claim for attorneys' fees.

██ We turn now to plaintiffs' contentions with respect to interest. Each policy contains the following provision:

> "When loss The amount of loss for which this Com-
> payable pany may be liable shall be payable
> sixty days after proof of loss, as herein
> provided, is received by this Company and ascertainment of the loss is made either by agreement between the insured and this Company expressed in writing or by the filing with this Company of an award as herein provided."

16

Although a letter admitted in evidence acknowledges that a proof of loss was submitted to Pekin, no proofs of loss are contained in the record. Upon authority of Di Leo v. United States Fidelity & Guaranty Company, 50 Ill App2d 183, 200 NE2d 405, we hold that interest should be awarded upon the sums due commencing 60 days after the submission of proofs of loss to the respective defendants.

For the reasons herein set forth, the judgment of the Circuit Court of Marion County is reversed and the cause is remanded to the Circuit Court of Marion County with directions to enter judgment in favor of plaintiffs and against the defendant, Reliance Insurance Company in the amount of $10,754.82, being ⁴⁄₇ths of plaintiffs' loss, the sum tendered by Reliance, together with interest computed on said sum, if any be due, at the rate of 5% per annum, commencing 60 days after submission of proof of loss until paid, and to enter judgment in favor of plaintiffs and against Pekin Insurance Company in the amount of $8,066.13, together with interest computed on said sum, at the rate of 5% per annum commencing 60 days after submission of proof of loss, and for such further proceedings as are consistent with this opinion.

Judgment reversed and cause remanded with directions.

MORAN and EBERSPACHER, JJ., concur.