JAMES W. MILLS et al., Plaintiffs-Appellants, v. STATE NATIONAL BANK et al., Defendants-Appellees.

(No. 58555;

First District (3rd Division)—May 1, 1975.

Sidney Z. Karasik, of Chicago, for appellants.

Jenner & Block, of Chicago (William B. Davenport, Clarold L. Britton, and Peter A. Flynn, of counsel), for appellee State National Bank.

Lieberman, Levy, Baron & Stone, of Chicago (Myron Lieberman and Robert L. Schlossberg, of counsel), for appellee Bankers Consultants.

Mr. JUSTICE McNAMARA delivered the opinion of the court:

Plaintiffs, James W. Mills and Mary Ann Mills, filed a class action complaint in the circuit court of Cook County against State National Bank (hereinafter the Bank) and Bankers Consultants Corporation, Bankers Consultants Corporation-North, and Mortgage Service Corporation (hereinafter the Brokers). Plaintiffs' first count of the amended complaint charged that a loan made by the Bank to plaintiffs which had been procured by the Brokers was tainted by usury and violations of Federal and State law. The second and third counts alleged that the Brokers had violated the Illinois Deceptive Trade Practices Act and the Illinois Consumer Fraud Act, respectively. After extensive pretrial discovery had been completed and after all parties had filed motions for summary judgment, the trial court granted defendants' motions with respect to count one, denied the Brokers' motions as to counts two and three, and denied plaintiffs' motions with respect to all of the counts. The trial judge accompanied his order with a written memorandum. Thereafter, plaintiffs volun-

tarily dismissed the second and third counts of the amended complaint. They have appealed from the order regarding count one.

The record consists of pleadings, affidavits, depositions, answers to interrogatories, and exhibits. It reflects the following pertinent facts.

State National Bank is a national banking association engaged in the general banking business, including the making of loans. Bankers Consultants Corporation and Bankers Consultants Corporation-North are both Illinois corporations involved in the loan brokerage business. Mortgage Service, another Illinois corporation under substantially the same ownership and control as the above-mentioned firms, specializes in evaluating credit for customers of the two loan brokerage corporations.

In April, 1967, plaintiffs borrowed $15,000 from a savings and loan association, secured by a first mortgage on their residence. In May, 1969, plaintiffs borrowed an additional $5,580 from Harris Mortgage Loan Corporation, secured by a junior mortgage on their home. The second loan was for a period of 3 years, payable in 36 monthly installments of $155 each, including interest at a purported annual percentage rate of 19.5 per cent.

In August, 1969, an employee of the Brokers contacted plaintiffs, informed them that he was aware of their latest loan, and related that his company might be able to refinance the loan on better terms. The parties in this case differ as to the precise nature of the representations made by the Brokers' employee. In any event, on August 12, 1969, after concluding a meeting with a different representative of the Brokers, plaintiffs signed a "Retention Agreement" authorizing the Brokers to negotiate a loan on their behalf with a bank up to $5,800 or such other sum as might be mutually satisfactory. The agreement further provided that successful negotiation of a loan would entitle the Brokers to a $700 commission which the Brokers could "cause the lender to disburse  *  *  *   from the principal amount of the loan at the same time and as part of the proceeds of the said loan  *  *  *." In the event that plaintiffs failed to follow through with an approved loan agreement secured by the Brokers, the agreement stipulated that the Brokers would still be entitled to their fee as "liquidated damages" for the negotiation of the loan. At the meeting the Brokers' representative prepared a loan application for plaintiffs using the Brokers' forms and credit information furnished by plaintiffs.

Subsequently, the Brokers submitted the loan application to defendant bank. The Bank independently verified the credit information contained in the application and made additional credit inquiries. The Bank eventually approved the loan. The loan was evidenced by a certain installment

of $159.55 each, including certain add-on finance charges at a purported annual percentage rate of 19.75 per cent. The note was secured by a trust deed on plaintiffs' property.

At the closing on August 27, 1969, the Bank delivered to plaintiffs a document purporting to be a full disclosure of information concerning the particulars of the loan as required by the Federal Truth-In-Lending Act (15 U.S.C. § 1601 *et seq.* (1970)) and Regulation Z thereunder, as well as the Illinois interest statute (Ill. Rev. Stat. 1969, ch. 74, par. 4a). On the face of the document, the finance charge was listed as follows:

"FINANCE CHARGE, consists of: ...................$2,379.86
Service Charge .......................$  700.00
Interest ..............................$1,679.86"

Plaintiffs then executed all the pertinent documents and approved the disbursements of the loan proceeds, including the fee that was paid to the Brokers.

The notice of right of rescission contained an error. Although the printed copy stated that the borrowers had until midnight of the third business day after consummation of the deal to rescind the transaction, the date "August 29" instead of "August 30" was typed in the pertinent blanks.

Plaintiffs made their payments on the loan until this action was filed. They thereupon fully paid off the loan and discharged the debt.

Plaintiffs' first principal contention is that the Brokers acted in this matter as agents of the Bank and, therefore, that the Brokers' fee should be treated as additional interest, thereby rendering the loan usurious. Plaintiffs additionally argue that the loan should be considered void because of various violations of Federal and State disclosure laws.

In denying the existence of a principal-agency relationship between it and the Brokers, the Bank points to the following facts set forth in defendants' affidavits.

Between April, 1968, and August, 1970, the Brokers submitted a number of loan applications to the Bank on behalf of the Brokers' customers. The Bank did not solicit any of the applications and played no part in the Brokers' decisions to submit the applications. The Brokers dealt with more than six other banks in the area, and the Bank handled a substantial amount of installment loans involving people and firms other than the Brokers. The Bank granted 137 of the loan applications submitted to it by the Brokers, some on terms other than those sought, and rejected at least 41. Many of the applications rejected by the Bank were eventually approved by other banking institutions. The Bank independently verified credit information supplied in connection with any proposed loan and independently obtained further credit information on proposed borrowers.

The Brokers never exercised any authority regarding the loan once it had been approved, never had or purported to have any authority concerning renewals or extensions of loans, and never had any responsibility in the collection or service of loans. The Bank solely determined whether to grant a loan. The Bank never had any agreement concerning the brokerage fees with the Brokers or their customers and never received any portion of the fees. It never suggested how the Brokers should be paid. Although the Bank was aware that a written agreement existed between the Brokers and their customers, the Bank was never given a copy of the agreement, played no role in drafting it, and was not aware of the specifics contained in it.

■■ The pivotal issue in this case is whether the Brokers acted, at least in a partial capacity, as agents for the Bank. It is well-established in this State that a broker, in negotiating a loan of another person's money, may charge the borrower a commission without thereby making the loan at the full rate of interest usurious. (*Northern Trust Co. v. Sanford* (1923), 308 Ill. 381, 139 N.E. 603.) Where the fee is paid to the lender's agent for making the loan, with the lender's knowledge, the amount of the fee will be treated as interest for purposes of determining usury. (*Fowler v. Equitable Trust Co.* (1891), 141 U.S. 384.) Courts will not countenance an evasion of the usury statute and accordingly will look to the substance and not the form of a transaction. *Chicago Title & Trust Co. v. Jensen* (1933), 271 Ill.App. 419.

■■ An agent is one who undertakes to manage some affairs to be transacted for another by his authority, on account of the latter, who is called the principal, and to render an account. (*Farrell v. Lincoln National Bank* (1974), 24 Ill.App.3d 142, 320 N.E.2d 208.) The acts of an agent are considered in law to be those of the principal. (*John Deere Co. v. Metzler* (1964), 51 Ill.App.2d 340, 201 N.E.2d 478.) The agent's authority can come only from his principal. (*Wing v. Lederer* (1966), 77 Ill.App.2d 413, 222 N.E.2d 535.) The party alleging an agency relationship has the burden of proving it by a preponderance of the evidence. *Bright v. Max E. Miller & Son, Inc.* (1971), 2 Ill.App.3d 1051, 279 N.E.2d 98.

A recent decision of this court, *Farrell v. Lincoln National Bank* (1974), 24 Ill.App.3d 142, 320 N.E.2d 208, involves facts and questions of law identical to those found in this case. In *Farrell*, this court affirmed the trial court's allowance of summary judgment on behalf of the defendants bank and brokers, holding that the plaintiffs' inferences of agency were insufficient as a matter of law to overcome the facts and disclaimers offered by the defendants. We agree with the reasoning of *Farrell* and adhere to its conclusion.

In arguing that an agency relationship existed between the Bank and

the Brokers in this case, the plaintiffs point out that the Brokers obtained the relevant information regarding the security for the loan; that the Bank never examined the collateral; that the Brokers ordered a preliminary report of title, for which it was compensated by the Bank; and that the Brokers prepared the notes, trust deed, disclosure statement, and notice of right of rescission.

However, as was noted in *Farrell*, it is not uncommon for a third person anxious to consummate a business transaction for his client to assemble credit information for a lending institution. Hopefully, it will shorten the wait for the parties and make the application more attractive. In the absence of anything in the record to support an inference that the Bank was bound to accept the application prepared by the Brokers, we are unable to agree with plaintiffs that the mere preparation of these documents transformed the Brokers from agents of the borrowers to agents of the lender. It is clear to us that their actions were prompted by their own self-interest, not that of the Bank.

Plaintiffs also rely on a circular published and advertised by the Brokers which alleged that the Brokers represented a group of banks in making available bank loans to prospective customers. The circular stated in part as follows:

"CHICAGO GROUP OF BANKS APPROVE $16 MILLION PROGRAM FOR HOME OWNERS.

Recently, a group of Chicago Banks appointed Steven-Bruce Investment Co. [Bankers Consultants Corporation] Loan Representative for a New 16 Million Dollar Bank program.

The Bank funds will be used to offer Homeowners 1 to 5 year, large, personal loans from $1500-$7500. The program is designed to stop Homeowners from borrowing money from loan companies and finance companies and to curtail charge accounts and charge cards."

A second document offered by plaintiffs was a copy of a letter, dated October 20, 1966, sent by the Brokers to the Plaza Drive-In Bank. The letter purported to offer various local banks a package "loan arrangement" service whereby the Brokers would perform various services for the banks as their agents, such as soliciting loans, preparing and screening loan applications, investigating credit, preparing loan documents, and facilitating loan closings. The letter listed Richard C. Chapeck, a vice-president of State National Bank, as one of eight references.

According to the Bank's affidavits, the circular, admitted by the Brokers to be false, had not been seen by the Bank or its employees before this action was commenced. It had been issued without its authority or consent. The circular had been distributed over a year prior to the loan in

question and over 2 years prior to the institution of this suit. As to the letter, no Bank employee had received a copy of it, had ever been consulted about it, had ever approved it, or had even known of its existence prior to this action. Chapeck denied authorizing the use of his name as a reference and denied knowing it was being used in such a capacity.

■■ The short answer to plaintiffs' contention is that the two exhibits are not statements by the Brokers that they were acting as representatives of State National Bank. At most, they were solicitations by the Brokers for business. Even if the exhibits could be construed as claims by the Brokers of agency, the exhibits cannot be considered to establish agency because they would constitute mere statements of agents out of the principal's presence, never ratified or consented to by the principal. (*Farrell v. Lincoln National Bank*; *Fredrich v. Wolf* (1943), 383 Ill. 638, 50 N.E.2d 755.)

As a final claimed inference of agency, plaintiffs note that the disclosure statement described the Brokers' fee as a service charge. Since the Illinois Truth-In-Lending Act allegedly requires only the disclosure of fees of the lender, plaintiffs suggest that a proper inference to be drawn is that the Bank considered the commission to be its own and not the Brokers'.

Relevant sections of the Federal Truth-In-Lending Act (15 U.S.C. §§ 1602(f), 1605(a)(3) (1970)) and Federal Reserve Board Regulation Z (12 C.F.R. §§ 226.2(f), 226.2(m), 226.4(a)(3) (1970)) require the disclosure of a "finder's fee" paid to an "arranging" creditor as part of the finance charge. In this case, the Brokers qualify as such a creditor. Another provision of Regulation Z, section 226.6(d), permits a joint disclosure statement where there are multiple creditors. Thus, it is obvious the word "creditor" as used in these Federal provisions is broader in meaning than the word "lender" as used in our State provision. We conclude that the Banker's compliance with the Federal provisions has no probative value on the issue of agency. (*Farrell v. Lincoln National Bank.*) While the Bank may have been better served in designating the Brokers' fee as something other than a "Service Charge," we look to the substance of the transaction and not the form, and conclude that on the facts of this case this designation alone was insufficient to create a genuine issue of an agency relationship between the Bank and the Brokers. Accordingly, we hold that the trial court correctly ruled that as a matter of law the Brokers did not operate as the Bank's agents in the present case.

■■ Plaintiffs additionally argue that regardless of the resolution of the agency issue, this loan should be held usurious on its face because the commission was imposed "directly or indirectly" by the Bank as

consideration of the loan, thus requiring its treatment as interest. (See Ill. Rev. Stat. 1969, ch. 74, par. 4.1—1.) However, the evidence shows that the retention agreement was entered into prior to the time the Brokers approached the Bank. Since much of the argument offered by plaintiffs on this point is similar to that offered, and rejected, on the issue of agency, we are left with the mere fact that the Bank disbursed part of the loan proceeds to the Brokers as directed. Such evidence is insufficient to support plaintiffs' position.

Plaintiffs next seek to void this transaction because of alleged violations of Federal and State disclosure laws. In support of their position they maintain that the disclosure was untimely, that the notice of rescission was erroneous, and that the commission was made nonrefundable.

■■ We need not determine whether the disclosure on the day of closing was untimely. This issue was not raised in the trial court and hence must be deemed waived for purposes of review. (*Kravis v. Smith Marine, Inc.* (1975), 60 Ill.2d 141, 324 N.E.2d 417.) Plaintiffs' contention that the issue is preserved for our consideration because the trial judge "saw fit to touch upon it" in his memorandum is unsupported by legal authority, is unpersuasive, and is rejected by this court.

Plaintiffs argue that the incorrect date on the notice of right of rescission acted to "void the entire Loan and to make the defendants liable in this State Court action for a violation of the Federal statute."

■■ A review of the Federal Truth-In-Lending Act reveals that a violation of the Act of the type complained of here provides two possible remedies. One is a suit for a civil penalty within 1 year of the consummation of the consumer credit transaction. (15 U.S.C. § 1640(a) (1970).) In their brief plaintiffs concede that the present action is not founded upon this provision. The second possible remedy is an action for rescission. (15 U.S.C. § 1635(a) (1970).) However, it appears to us that plaintiffs are not seeking this remedy either. Count one of the amended complaint does not pray for rescission. Plaintiffs have never notified defendants of their decision to rescind, as the Federal statute requires. Moreover, plaintiffs prepaid the loan and discharged their obligation immediately after this action was commenced. Indeed, plaintiffs appear to concede the fact that they have never exercised their right to rescind, stating in their reply brief that they "could have rescinded" the loan instead of prepaying it. The gist of plaintiff's position appears to be that a violation of the notice of right of rescission section creates implicit additional rights under Illinois law to void the loan. We need not decide whether such an action is permitted under this provision because the issue was not raised or pleaded in the trial court.

Plaintiffs finally contend that the loan should be held void because the Brokers' fee was made nonrefundable upon rescission. This position is grounded upon an alleged statement made by a representative of the Brokers that a rescission of the loan by plaintiffs would have no effect on their fee. Brokers deny the veracity of the statement. There is nothing in the record indicating that the statement was made by an employee of the Bank.

The purported statement has no bearing on Illinois law. In the first place, Illinois law does not provide a right of rescission similar to the Federal provision. Furthermore, the only remotely pertinent State law provision, section 4a(a) of the Illinois interest act (Ill. Rev. Stat. 1969, ch. 74, par. 4a(a)); merely provides that a partial refund of interest must be made upon prepayment of a loan. Since we have held that the Brokers' fee in this case is not to be considered interest, the provision has no applicability. In regard to Federal law, section 1635(b) of the Truth-In-Lending Act does provide that upon rescission a borrower is not liable for "any finance or other charges." However, since plaintiffs have not sought rescission, that section also has no bearing on the present case.

We conclude that the trial court correctly granted summary judgment on count one in favor of the defendants. Since plaintiffs cannot successfully maintain their action individually, the class action cannot be maintained.

In view of our holding, it is not necessary to consider the additional contention of the Brokers that national banks are exempt from State usury laws.

Accordingly, the judgment of the circuit court of Cook County is affirmed.

Judgment affirmed.

McGLOON, P. J., and MEJDA, J., concur.