CONTINENTAL CASUALTY COMPANY, Plaintiff-Appellant, *v.* AETNA
INSURANCE COMPANY, Defendant-Appellee.

First District (5th Division)   No. 78-2148

Opinion filed March 14, 1980.

Willis R. Tribler and Mitchell A. Orpett, both of Chicago (Haskell & Perrin, of counsel), for appellant.

Clausen, Miller, Gorman, Caffrey & Witous, P. C., of Chicago (James T. Ferrini, Norman A. Miller, and Gary Kostow, of counsel), for appellee.

Mr. PRESIDING JUSTICE SULLIVAN delivered the opinion of the court:

This is an appeal from the entry of summary judgment for defendant in an action by plaintiff seeking a declaration that defendant was a co-insurer of a loss paid by plaintiff.

It appears from the parties' written stipulation of facts that defendant had issued a multi-peril policy expiring January 15, 1976, which insured property of Harvey C. Wagley *et al.* (hereafter Wagley) for damages resulting from fire to a limit of $1,350,000; that on January 8, when Stephen Burns (Wagley's insurance broker) learned that the policy renewal premium would be $6,062—more than twice the premium of the existing policy—he asked Corroon & Black (an insurance agency) to issue a binder extending the coverage on the expiring policy while he (Burns) obtained premium quotations from other insurance companies; that Corroon & Black (which was agent for both plaintiff and defendant, as well as other insurance companies) issued a binder extending defendant's coverage from January 15, 1976; and that no premiums were charged by or paid to defendant for this binder.

The stipulation also discloses that on January 14, 1976, Gil Gawin (a Corroon & Black insurance analyst) obtained from George Erickson (an employee of plaintiff) a premium quotation for coverage on the Wagley property of $4,580 per year with policy limits of $1,500,000; that on January 26, Erickson confirmed the quotation in writing to Gawin; that Burns then instructed Gawin, on January 29, to issue a policy with plaintiff on the Wagley property; that pursuant thereto, Corroon & Black, on January 30, issued a binder with plaintiff covering the property beginning on January 15; that this coverage was in replacement of and not a supplement to the original policy issued by defendant—which had expired on January 15; that the Wagley property was damaged by fire on January 31, and Wagley made a claim only to plaintiff—which paid damages of $158,023.93.

When defendant refused a demand for a contribution to that loss, plaintiff brought the instant action seeking a declaration (1) that the binder issued by defendant to Wagley, which covered the same property as did plaintiff's binder, was in force and effect at the time of the fire; and (2) that plaintiff is entitled to a contribution from defendant of 50% of the amount paid on the fire loss. In its answer, defendant asserted that its binder was substituted for and replaced by plaintiff's binder, thereby making plaintiff the sole insurer of the property at the time of the loss. Plaintiff then moved for summary judgment, asserting that the doctrine of cancellation by replacement and substitution operated to cancel the Aetna binder on January 30, 1976, and that it therefore had no obligation to contribute to the loss paid by plaintiff. The motion was supported by

an affidavit of Corroon & Black, by Bruce O'Neil (its senior vice-president), and excerpts from O'Neil's deposition. The affidavit states that Corroon & Black is the agent of both plaintiff and defendant; that it acted on behalf of each in issuing their respective binders; that on January 30, 1976, it bound plaintiff for the period of January 15, 1976, through February 15, 1977; that the intent of the transaction was to replace the coverage of defendant with that of plaintiff; and that, but for the fact that the fire occurred one day after the issuance of plaintiff's binder, Corroon & Black would have in its regular course of business formally canceled defendant's binder effective back to January 15, 1976.

In the excerpts of his deposition, O'Neil stated that he had attended a meeting between executives of Corroon & Black and plaintiff, at which Erickson (an underwriter for plaintiff) acknowledged that plaintiff had bound the Wagley risk on January 30, 1976, and that Lowell Haberer (branch manager of plaintiff) had acknowledged coverage for the loss. O'Neil stated also that no formal document was prepared canceling the binder issued by defendant, although normally it would have been prepared three or four days later; that such notice of cancellation was a clerical function; and that in the ordinary course of business, a cancellation notice to defendant would have canceled the binder back to January 15, 1976—the maturity date of the original policy; that plaintiff had accepted the risk on January 30; that under the common practices of the insurance industry, when a company accepts a binder the preceding company is off the risk; and that when plaintiff accepted the binder and risk, it did not indicate that it was accepting only 50% of the risk.

It appears that with the consent of the parties, the court held an evidentiary hearing limited to the question of intent as to the binder with defendant. At this hearing, O'Neil testified that he was a senior vice-president and senior property underwriter at Corroon & Black, with 28 years experience in the insurance business; that Corroon & Black acts as an agent for certain insurance companies with authority to issue and cancel binders; that under the general practice of the insurance industry, a new policy issued prior to the expiration of a 30-day binder supersedes the binder; that under the practice of the industry, when new coverage is procured, it goes into effect the date on which the coverage is agreed upon; that the acts of Corroon & Black with respect to the disposition of unexpired binders binds the companies for whom it is agent; that notice of cancellation of an unexpired binder has no effect upon the date the binder is canceled; and that when coverage with plaintiff was obtained, with the effective date of January 15, plaintiff agreed to accept the risk 100%—thereby replacing the binder with defendant in its entirety.

Stephen Burns (insurance broker for Wagley), testifying for defendant, stated that he had authority to use his best judgment in

arranging Wagley's insurance coverage subject to Wagley's approval; that as Wagley's broker, he believed that the agreement he reached with Corroon & Black for plaintiff to accept the risk of January 15, 1976, automatically put defendant off the risk; that no acts he performed on behalf of Wagley in connection with the risk were overruled by Wagley; that it was his intention that the binder with defendant would be canceled when coverage was obtained with plaintiff; and that he did not receive a notice of cancellation of the binder with defendant, nor did he expect it as he believed the binder was canceled "flat."

Gilbert Gawin (a Corroon & Black insurance analyst), testifying as a witness for defendant, stated that he reached an understanding with Burns that the binder with defendant would be canceled upon the procurement of coverage with plaintiff because the latter had assumed the risk as of January 15, 1976—the effective date of the binder with defendant; and that Wagley was never charged a premium for the issuance of the binder with defendant because there was no coverage in effect for the period of the binder.

The trial court found from the evidence it heard that it was the intent of defendant's agent to cancel the binder of defendant by the substitution of the binder with plaintiff. Accordingly, summary judgment was entered in favor of defendant, and this appeal followed.

OPINION

It is plaintiff's initial contention that the trial court improperly based its entry of summary judgment on the doctrine of automatic cancellation by substitution and replacement. By this doctrine, the procurement of any insurance by an insured, or his authorized agent, for a term commencing before the expiration of existing insurance with an intent to have the new insurance take the place of the old and with no intent to thereby acquire additional insurance, constitutes an effective cancellation of the existing insurance.

Plaintiff, relying on *Lee v. Ohio Casualty Insurance Co.* (1978), 58 Ill. App. 3d 1, 373 N.E.2d 1027, argues that the doctrine is not the law in Illinois and, alternatively, it maintains that even were we to hold it to be the law, there was a material question of fact as to whether an intent to cancel automatically was established because (1) certain statements by Corroon & Black officials indicated an intent to cancel at a time subsequent to the loss; (2) plaintiff's binder had not formally issued at the time of the loss; and (3) Corroon & Black personnel informed defendant that its binder was in effect at the time of the loss.

In *Lee*, the court refused to apply the doctrine, stating:

"Courts which have recently reviewed the so-called doctrine of cancellation by replacement and substitution have often noted that

it is now disfavored and have declined to apply it. (*E.g., Franklin v. Carpenter* (1976), ___ Minn. ___, 244 N.W.2d 492; *Harty v. Standard Accident Insurance Co.* (1959), 394 Pa. 358, 147 A.2d 421.) In New York, for instance, an insured's intent to cancel a policy does not effect a cancellation until notice is received by the insurer or its agent. (*Russ Togs, Inc. v. Fidelity-Phenix Insurance Co.* (1971), 36 App. Div. 2d 706, 319 N.Y.S.2d 1; *New Hampshire Insurance Co. v. Cruise Shops, Inc.* (Sup. Ct. 1971), 67 Misc. 2d 60, 323 N.Y.S.2d 352.) Other courts have stated that something greater than intent to cancel is required to actually effect a policy cancellation by substitution (*Northern Insurance Co. v. Mabry* (1966), 4 Ariz. App. 217, 419 P.2d 347; *Ector v. American Liberty Insurance Co.* (1976), 138 Ga. App. 519, 226 S.E.2d 788), and that an automatic, unilateral cancellation of the policy cannot be effected unless it so stipulates. (*Tyner v. Cherokee Insurance Co.* (1974), 262 S.C. 462, 205 S.E.2d 380.) Many other courts have looked for a meeting of the minds through communication and consent before finding a valid cancellation by substitution. (*Glenn Falls Insurance Co. v. Founders Insurance Co.* (1962), 209 Cal. App. 2d 157, 25 Cal. Rptr. 753; *Baysdon v. Nationwide Mutual Fire Insurance Co.* (1963), 259 N.C. 181, 130 S.E.2d 311; see Annot., 3 A.L.R.3d 1072 (1965).)" 58 Ill. App. 3d 1, 5, 373 N.E.2d 1027, 1030-31.

■■ Thus, it may be seen that *Lee*, while holding something more than intent is required to effect a cancellation, does not make any specific statement as to what was additionally needed. It points to what other jurisdictions have held; namely, that in New York an intent is not effective until notice is received by the insurer and that in other States there must be a meeting of the minds through communication and consent before cancellation by substitution will be valid. In any event, we agree with the general holding in *Lee* that something more than intent alone is required to effect an automatic cancellation and, thus, we hold that the entry of summary judgment was improperly entered based upon the doctrine. Having so held, it will not be necessary to consider the alternative contention of plaintiff that there is a question of fact as to whether the necessary intent required by the doctrine was established.

Interestingly, defendant is apparently in agreement with this holding as, on oral argument here, it stated that it was not relying upon the doctrine; rather, it took the position that lines 56-67 of its policy—which it states was a standard form required by the Illinois Doctrine of Insurance—provide that the policy may be canceled at any time at the request of the insured. Maintaining there is no question that the insured requested cancellation in the instant case, it argues that the policy

provisions require affirmance of summary judgment. However, the policy here has not been included in the record and, while orders and decisions of the Illinois Commerce Commission have been judicially noticed as being public records (see *Nordine v. Illinois Power Co.* (1965), 32 Ill. 2d 421, 206 N.E.2d 709), as have reports and public records of the Department of Public Welfare (see *Department of Public Welfare v. Bohleber* (1961), 21 Ill. 2d 587, 173 N.E.2d 457), the policy here was not otherwise distinguished from other standard policies nor was our attention called to any order or directive of the Department of Insurance concerning the said policy, and we will not judicially notice the provision relied on by defendant. Accordingly, we reject its position that cancellation was effected under the provisions of the policy.

We turn then to the remaining contention of plaintiff that there was no mutual consent to cancel defendant's policy. The parties agree that cancellation may be effected by mutual consent (see *Cohn v. Mechanics & Traders Insurance Co.* (1912), 175 Ill. App. 594; 43 Am. Jur. 2d *Insurance* §432 (1969); J. Appleman, 6A Insurance Law and Practice §4194, at 604-05 (1972)), but plaintiff argues that mutual consent is lacking here—first, because "Corroon and Black did not advise Aetna before the fire that its policy had been replaced"; and second, because the insured "did not ratify the purported substitution and replacement before the fire."

Initially, we note that in insurance law it is generally accepted that a broker, by definition, is the agent of the insured; whereas, an agent, by definition, is the agent of the insurer (*Roby v. Decatur Steel Erectors, Inc.* (1978), 59 Ill. App. 3d 720, 375 N.E.2d 1355; *Ross v. Thomas* (1977), 45 Ill. App. 3d 705, 360 N.E.2d 126), and that the acts of an agent within the scope of his authority are regarded in law to be those of the principal (*Mills v. State National Bank* (1975), 28 Ill. App. 3d 830, 329 N.E.2d 255; *John Deere Co. v. Metzler* (1964), 51 Ill. App. 2d 340, 201 N.E.2d 478). We note also that the parties here have stipulated that Corroon & Black had agency contracts with both plaintiff and defendant; that Burns was the insured's broker at all times relevant to this appeal; that Burns, upon learning that defendant was asking a premium of more than twice that on its expiring policy, requested Corroon & Black to issue a binder extending the coverage from January 15 to February 15, 1976, while he sought quotations for a lesser premium from other insurance companies; that when Corroon & Black informed Burns that plaintiff's premium would be considerably less to insure the same risk, it was asked by Burns to issue plaintiff's binder on Wagley's property with coverage commencing January 15, 1976, and that this coverage with plaintiff was to replace and not supplement the policy with defendant. In addition to those stipulated facts, it is uncontradicted from the testimony of O'Neil that Corroon & Black had the authority to issue and cancel binders for the

companies with which it had agency contracts, and it is undisputed that the insured (Wagley) did not want double coverage; that Corroon & Black issued defendant's binder on a temporary basis, and that, in issuing it, Corroon & Black knew that it was to be replaced when other less expensive coverage was obtained. Under these circumstances, this knowledge of Corroon & Black was chargeable to defendant (its principal) and, accordingly, we reject defendant's contention that there was no mutual consent because defendant lacked knowledge that its policy had been replaced.

Plaintiff's second argument that mutual consent was lacking centers in the testimony of Burns, who when asked whether he had been given any authority to act on Wagley's behalf, answered, "Wagley pretty well left it up to me to decide what he needed; consult with him periodically but go ahead and use my best judgment in arranging his insurance coverage." Burns then answered, "I just couldn't go out and buy something he [Wagley] didn't feel that he needed without his approval." Then, when asked whether Wagley had given his approval, Burns answered, "Eventually, yes."

■■ Based upon Burns' answer that he could not buy anything that Wagley did not need without the latter's approval, plaintiff posits that mutual consent was lacking because Wagley "did not ratify the purported substitution and replacement before the fire." Concerning ratification, the court in *Larsen v. Thuringia American Insurance Co.* (1904), 208 Ill. 166, 171, 70 N.E. 31, 32, commented:

> "It is said that 'ratification, as it relates to the law of agency, is the express or implied adoption of the acts of another by one for whom the other assumes to be acting, but without authority; and this results as effectually to establish the duties, rights, and liabilities of an agency as if the acts ratified had been fully authorized in the beginning.' [Citation.]"

■■ Here, it was Burns' testimony that he had authority to use his best judgment to decide what insurance Wagley needed and that the approval of Wagley was only required as to insurance obtained by Burns that Wagley "didn't feel he needed." There is no question that Wagley did not desire double coverage and that he wanted the Aetna binder to be canceled when other coverage was obtained at a lesser cost effective on the same date as the Aetna binder. It appears clear to us that Burns had the authority to effect a change of policies without the necessity of any approval by Wagley, and there can be no doubt that the coverage in question was needed by Wagley. The principle of ratification applies when an agent acts without authority (*Larsen v. Thuringia American Insurance Co.*), and we reject the contention of plaintiff that mutual consent was lacking because Wagley had not ratified the action of Burns.

■■ Moreover, even were we to assume that Burns acted without authority, the record discloses that Wagley eventually approved this action. Plaintiff recognizes that, as it contends only that the ratification should have taken place before the loss occurred. No cases are cited in support of this position, and there is authority to the contrary. As stated in *Stock v. Reliance Insurance Co.* (1968), 96 Ill. App. 2d 8, 15, 238 N.E.2d 420, 423:

> "From our examination of the authorities we conclude that a contract of insurance made on behalf of an insured, without his knowledge or authority, may be ratified by the insured, even after a loss has occurred, provided the insurer has not meanwhile withdrawn its previous assent. [Citations.]"

For the reasons stated, we find that summary judgment was properly entered in defendant's favor.

Affirmed.

LORENZ and WILSON, JJ., concur.