DONALD F. SIZELOVE, Plaintiff-Appellant, *v.* INA INSURANCE COMPANY OF NORTH AMERICA *et al.*, Defendants-Appellees.—(THE WESTERN FIRE INSURANCE COMPANY *et al.*, Defendants.)

Fourth District    No. 17385

Opinion filed March 11, 1982.

Luedtke, Hartweg & Turner, of Bloomington (John R. Luedtke, of counsel), for appellant.

Heyl, Royster, Voelker & Allen, of Urbana (William J. Voelker, Jr., James C. Kearns, and Edward M. Wagner, of counsel), for appellees.

JUSTICE LONDRIGAN delivered the opinion of the court:

Plaintiff brought a declaratory judgment action seeking to have the court declare that certain fire insurance policies were in effect on the date his building was destroyed by fire. The trial court granted summary judgment to INA and Hartford, holding that plaintiff's purchase of new policies shortly before the fire coupled with plaintiff's communication to the insurer of plaintiff's intent to cancel his existing policies operated to cancel the existing policies under the doctrine of cancellation by substitution. Plaintiff appeals from that order.

Plaintiff owned land and a building located in Bloomington. The building and its contents were destroyed by fire on January 23, 1979.

Shortly after purchasing the property, plaintiff obtained fire insurance through a local agency, the Frisch-Hodnett Agency. Frisch-Hodnett contacted another local agency, Capen, Frank, Proctor and Bowles (CFPB), and asked if CFPB would procure the insurance. CFPB obtained policies in an aggregate amount of approximately $125,000. Plaintiff also obtained additional coverage totalling $55,000 through another local agent, Bernard Jacobs.

In the fall of 1978, plaintiff asked John Bova of Clemens and Associates to obtain new and different coverage in an amount of $300,000 and to take steps to place plaintiff's insurance coverage with Bova. Bova contacted several insurance companies and obtained four policies with aggregate coverage totalling $300,000.

Bova received these policies on January 11, 1979. On that date, he sent a letter to C. William Frank of CFPB. Bova wrote:

"Bill: We did get the policies changed and we would appreciate any return premiums be forwarded to our office. We got the fire and comprehensive general liability coverages. Thank you. John Bova."

Frank's secretary telephoned Bova on January 18, 1979. Bova was out of town. Frank's secretary left a message for Bova to call CFPB. When Bova returned on January 22, 1979, he called Frank's secretary. She told him that either the original policies or lost policy releases would be needed in order to cancel the existing policies.

On January 22, 1979, Frank's secretary sent the following memorandum to John Bova:

> "Please have Don Sizelove sign the attached lost policy releases and we will order cancellation effective 11-15-78. Please type in a policy number for each under the reason for cancellation in case the insuring companies get huffy over our late request. Thank you for your help."

On that same date, she sent the following letters to INA and Hartford:
To INA:

> "We have been advised that the insured purchased duplicate coverage from another agent effective 11-15-78. As soon as I get lost policy release and new policy number, I'll forward on to you."

To Hartford:

> "Please be advised that we will be sending above back to you for cancellation effective 11-15-78. Insured purchased from Clemens and Associates. As soon as I get a lost policy release, I'll send it in."

Frank stated that the usual procedure was to forward the original policy or policy releases along with new policy numbers to the insurance company and request that they cancel the existing policies. The defendant insurance companies never issued any credit memoranda regarding these policies. Neither the plaintiff nor John Bova ever received a refund of the unearned premiums from INA or Hartford.

Plaintiff's building was destroyed by fire in the early morning hours of January 23, 1979. INA and Hartford have denied liability, claiming that their policies were not in effect on the date of the fire.

The trial judge entered an order on February 25, 1981, granting defendants' motion for summary judgment. In his order, Judge Knecht discussed the doctrine of cancellation by substitution. He stated that the act of securing new coverage with the intent of replacing existing coverage coupled with the mutual consent of the parties will result in the cancellation of the existing policies. He discussed the facts of the instant case which made the doctrine of cancellation by substitution applicable:

> "In short, (1) replacement insurance was secured; (2) the intent to cancel was present; (3) the Plaintiff desired only $300,000 of coverage; (4) communication occurred between Bova and CFPB; (5) a request to cancel was made; (6) and CFPB indicated some additional paperwork was needed to formalize the cancellation. Bova was Plaintiff's agent and CFPB was Hartford and INA's agent. Plaintiff's agent actively sought cancellation and a premium refund. Plaintiff did not want nor did he expect to have coverage in excess of $300,000. The conduct of defendants' agent constituted an acceptance of the notice requesting cancellation. If no fire had

occurred, the only issue between the parties would be the amount of Plaintiff's premium refund."

The issue now before us is whether obtaining a new insurance policy with the intent to have the new policy replace existing coverage coupled with notification to the insured's old agency of this intent operates as a cancellation of the existing policies by substitution.

Three recent Illinois cases have dealt with the doctrine of cancellation by substitution: *Lee v. Ohio Casualty Insurance Co.* (1978), 58 Ill. App. 3d 1, 373 N.E.2d 1027, *Continental Casualty Co. v. Aetna Insurance Co.* (1980), 82 Ill. App. 3d 402, 402 N.E.2d 756, and *Songer v. State Farm Fire & Casualty Co.* (1980), 91 Ill. App. 3d 248, 414 N.E.2d 768.

In *Lee*, plaintiffs were the lessors of a building destroyed by fire on November 6, 1973. Prior to the fire, plaintiffs had $178,000 in coverage through various insurers. On November 2, 1973, plaintiffs obtained a 30-day binder from Illinois National Insurance for $180,000 of fire coverage. Plaintiffs intended to cancel their existing fire policies when they received the new policy. The existing insurers had no knowledge of plaintiff's intent.

After the fire, the original insurers refused to pay, claiming that their policies were automatically cancelled when plaintiffs obtained a binder from Illinois National. The trial court found for the original insurer.

On appeal, this court rejected the doctrine of *automatic* cancellation by substitution. We refused to find that the existing policies had been cancelled by substitution of new policies where plaintiffs (1) purchased insurance from a new agent; (2) did not surrender the existing policies; (3) did not notify the original insurers of their desire to cancel; and (4) did not intend to cancel until the new policies were received.

*Continental Casualty Co.* was a declaratory judgment action brought by plaintiff insurance company seeking to have a second insurer declared a co-insurer of loss suffered by one of plaintiff's policy holders. In *Continental Casualty Co.*, a policy holder (Wagley) wanted different insurance because the premiums on his existing policy had increased. Wagley's agent obtained a binder from defendant through a broker, Corroon & Black. This binder extended the current coverage, which was about to expire, until a less expensive policy could be obtained.

Wagley purchased a new policy from plaintiff through Corroon & Black on January 29. On January 30, plaintiff issued a binder covering Wagley's property effective January 15. No formal document was prepared cancelling defendant's binder on January 30. In the normal course of events, a cancellation notice would have been given to defendant in three or four days, cancelling the binder effective January 15. Wagley's property was damaged by fire on January 31.

Plaintiff sought contribution from defendant. The trial court granted

defendant's motion for summary judgment, finding that defendant's agent intended to cancel defendant's binder by substituting the binder of plaintiff.

The First District affirmed the grant of summary judgment. The court agreed with *Lee*, stating that more than a mere intent to cancel must be shown. However, the court affirmed the grant of summary judgment on the basis that mutual consent to cancel existed between defendant and Wagley. The court listed several factors which led to this conclusion: (1) the insured did not want double coverage; (2) Corroon & Black issued defendant's binder on a temporary basis, knowing that it was to be replaced when less expensive insurance was obtained; and (3) Corroon & Black's knowledge was chargeable to the defendant.

In *Songer*, plaintiff took out a policy on his farm house with Country Mutual in 1973. Plaintiff became dissatisfied with the coverage, and he obtained a binder from State Farm. Shortly thereafter, fire destroyed plaintiff's farm house. No notice of cancellation was given to Country Mutual, nor did Country Mutual refund any unearned premium. The Fifth District found Country Mutual liable for its *pro rata* share of the loss, relying heavily on the principles enunciated in *Lee*.

■■ Each of these cases clearly rejects the doctrine of automatic cancellation by substitution, *i.e.*, the act of procuring new coverage with the intent that it would replace existing coverage does not, standing alone, operate to cancel the existing coverage. However, none of the cases announces a clear and concise rule to aid courts in deciding whether cancellation by substitution has taken place.

■■ We are persuaded that a party desiring application of the doctrine of cancellation by substitution must show (1) that the insured secured substitute coverage and either acted in such a manner as would disclose to the insurer an intent to cancel the existing coverage or requested cancellation under the terms of the existing policy; or (2) that the insured secured substitute coverage and that mutual consent to cancel the existing coverage existed between the insured and the insurer.

Clearly, plaintiff intended to replace the existing policies with the new policies, as enumerated above in the six points of the trial court's order.

Defendant also established that an agreement to cancel existed between plaintiff and defendant. Bova notified Frank on January 11 that new coverage had been obtained. Frank's secretary informed Bova that when plaintiff executed the lost policy releases, cancellation would be ordered effective November 15, 1978. Frank's secretary also notified defendants of the cancellation. The execution of the lost policy releases was merely a ministerial act. Had the fire not occurred when it did, plaintiff would have executed the lost policy releases, the insurance company

would have followed its normal procedures, and the policy would have been cancelled effective November 15, 1978.

■■ We find that the facts support the finding by the trial court that the policies issued by the defendants were cancelled by substitution.

The judgment of the circuit court of McLean County is affirmed.

Affirmed.

MILLS and TRAPP, JJ., concur.