JOEL COPLEY *et al.*, Plaintiffs-Appellees, v. PEKIN INSURANCE COMPANY, Defendant-Appellant.

Fourth District   No. 4—84—0310

Opinion filed January 30, 1985.—Rehearing denied March 4, 1985.

Vance I. Kepley, of Reno, O'Byrne & Kepley, P.C., of Champaign, for appellant.

Craig J. Causeman, of Thomas, Mamer & Haughey, of Champaign, for appellees.

JUSTICE MILLS delivered the opinion of the court:

Doctrine of cancellation by substitution?

Yes.

We reverse.

Joel Copley and Federated Mutual Insurance Company (Federated) filed their two-count complaint on August 10, 1982, naming Pekin Insurance Company (Pekin) as defendant. In count I, Copley asked the court to declare his rights under an insurance policy which he had purchased from Pekin. In count II, Federated asked the court to declare the respective rights and liabilities of Pekin and Federated with regard to a fire loss suffered by their alleged insured, Copley. Pekin contended that its policy with Copley had been cancelled pursuant to the doctrine of cancellation by substitution. The trial court subsequently entered judgment in favor of the plaintiffs, holding that the Pekin policy was in full force and effect at the time of the fire.

A bench trial was held on March 26 and 27, 1984. Testimony at

trial indicated that Copley was the owner of an appliance business in Farmer City. In August 1979 Copley purchased a special multiperil insurance policy from Pekin. Copley subsequently renewed the policy in 1980 and again in August 1981. The policy was renewed through John Colvis, an agent of Pekin and personal friend of Copley. In August 1981 Copley paid a lump sum premium to renew the policy for the following year.

Emmanuel DeFrates, an agent for Federated, met with Joel Copley several times prior to September 1981 in an attempt to convince Copley to transfer his insurance coverage to Federated. Copley subsequently bought insurance from DeFrates, which took effect on September 28, 1981. The Federated policy provided $25,000 in insurance coverage for the building which contained Copley's business and $40,000 for the contents and personal property therein. The Pekin policy had provided $25,000 in coverage for the building and $30,000 for personal property therein.

At trial, Copley testified that he never intended to "keep" both policies. Instead, he intended to cancel the Pekin policy after the Federated policy took effect.

On approximately November 18, 1981, DeFrates delivered the Federated policy to Copley's appliance store. Copley was not present at that time, but DeFrates did speak to Copley's wife, Marsha, who also worked at the store. DeFrates testified that Marsha was concerned about the insurance premium that had been paid to Pekin. DeFrates then asked her if he could go to the Pekin insurance agency to determine what had become of the premium payment and to see if he could get a refund for the Copleys. Marsha Copley agreed that DeFrates could act on her behalf in this manner. DeFrates then visited the offices of Farmer City Insural. This insurance agency had been purchased from John Colvis on October 31, 1981, and continued to represent Pekin. DeFrates asked Robert Bockler, vice-president of Farmer City Insural, to cancel Copley's policy with Pekin and to return to the Copleys a premium refund.

DeFrates then returned to the Copley's store and informed Joel Copley of where he had been and what he had done. Copley testified that on November 18, 1981, he was "probably" expecting a refund of his Pekin premium. He knew that DeFrates had visited Farmer City Insural to find out if the Pekin policy had indeed been cancelled. Copley testified that he wouldn't have refused a refund prior to the time of the fire. After he learned of DeFrates' actions on November 18, 1981, Copley expressed no objection.

Copley further testified that John Colvis also visited his store on

November 18, 1981, apparently at the request of Robert Bockler. Colvis told Copley that if he cancelled the Pekin policy, Colvis would have to "pay back all of the commissions." Although he no longer represented Pekin, Colvis also attempted to persuade Copley that the Pekin policy offered more coverage than the Federated policy. After speaking to Colvis, Copley decided to obtain more information about both policies. However, Copley testified that up to the date of the fire, he would not have objected if he had received a refund of his Pekin premium and that he was "looking to get a refund back."

Marsha Copley testified that she had spoken to John Colvis on the day before DeFrates came to the appliance store. She asked Colvis why they had received no refund check for their Pekin policy premium. When she spoke with DeFrates on the next day she directed him to Farmer City Insural when he offered to find out "what was going on." She testified that DeFrates later returned to the store and informed her of what he had done. She assumed that she and her husband would then receive a refund.

Robert Bockler testified that DeFrates visited his office on approximately November 18, 1981, and requested that he cancel Joel Copley's policy with Pekin. Bockler asked DeFrates to provide him with a copy of the declaration page of the Federated policy that was to replace the Pekin policy. DeFrates complied with this request. Bockler then told DeFrates that he would "take care of it." Bockler testified that, in order to cancel the policy, he needed to contact Joel Copley to obtain a signed cancellation or the return of the actual policy. Bockler also testified that he did ask John Colvis to talk to Copley to see if Copley actually wanted to cancel the policy. However, Colvis never contacted Bockler. Bockler further testified that Betty Yeagle, the agent-manager of his office, attempted to contact Copley several times after November 17 but before the December 15 fire.

Yeagle testified that she prepared a release for Copley to sign two days after DeFrates visited the office of Farmer City Insural. She attempted to contact Copley so that he could sign the release or return the actual policy in order to cancel the policy.

Copley's appliance business was destroyed by fire on December 15, 1981. Copley informed DeFrates of the fire immediately after its occurrence. However, Farmer City Insural was not contacted by Copley until three or four weeks later. As a result of the fire, Federated compensated Copley to the limits of its policy coverage. Pekin denied plaintiffs' claim for compensation.

The trial court found in favor of the plaintiffs in its judgment order of March 29, 1984. In support of its judgment, the court made several

findings, among which were: (1) that Copley intended to cancel the Pekin policy, (2) that DeFrates conveyed this intent to Pekin's agents, and (3) that assuming DeFrates acted with authority, Bockler did not "accept" the cancellation request but, in effect, rejected it. Pekin filed timely notice of appeal on April 25, 1984.

On appeal, Pekin contends that its policy with Copley was cancelled pursuant to the doctrine of cancellation by substitution. Therefore, Pekin argues that the trial court erred in determining that its policy with Copley was in full force and effect on December 15, 1981. The plaintiffs respond that the trial court correctly found that Pekin had failed to establish that the policy had been cancelled by substitution.

All of the parties agree that this court's decision in *Sizelove v. INA Insurance Co.* (1982), 104 Ill. App. 3d 864, 433 N.E.2d 696, controls the outcome of the present case. In that case, the court announced a clear rule to aid courts in deciding whether cancellation by substitution has taken place. The court stated:

> "We are persuaded that a party desiring application of the doctrine of cancellation by substitution must show (1) that the insured secured substitute coverage and either acted in such a manner as would disclose to the insurer an intent to cancel the existing coverage or requested cancellation under the terms of the existing policy; or (2) that the insured secured substitute coverage and that mutual consent to cancel the existing coverage existed between the insured and the insurer." 104 Ill. App. 3d 864, 868, 433 N.E.2d 696, 699.

We find that the first prong of the *Sizelove* rule has been established here. It is undisputed that Copley secured substitute coverage when he purchased the Federated policy. Additionally, we hold that Copley effectively requested the cancellation of his existing Pekin policy.

We find that DeFrates' request to cancel the Pekin policy was authorized by Copley since Copley later ratified the actions of DeFrates. After having learned that DeFrates had requested the cancellation of his Pekin policy, Copley made no objection to any party. Where an act is performed by one person without authority for the benefit of another, or by an authorized agent in excess of his authority, the person for whose benefit the act was performed may ratify such act. (1 Ill. L. & Prac. *Agency* sec. 69 (1953).) Ratification is the express or implied adoption of the acts of another by one for whom the other assumes to be acting, but without authority, as if the acts ratified had been fully authorized in the beginning. (*Larsen v. Thuringia American Insurance Co.* (1904), 208 Ill. 166, 70 N.E. 31; *Continental Casualty Co. v. Aetna*

*Insurance Co.* (1980), 82 Ill. App. 3d 402, 402 N.E.2d 756.) Acquiescence or a failure to repudiate on the part of the person for whose benefit the act was performed will be held to constitute a ratification. (*Chalet Ford, Inc. v. Red Top Parking, Inc.* (1978), 62 Ill. App. 3d 270, 379 N.E.2d 88; *Williamson v. McCann & Co.* (1954), 2 Ill. App. 2d 42, 118 N.E.2d 42.) Accordingly, Copley's failure to object, after learning of DeFrates' actions, constituted a ratification of the request to cancel. In other words, Copley adopted the request as his own.

Our holding is reaffirmed by Copley's testimony that he intended to cancel the Pekin policy and that he expected to receive a refund up until the date of the fire. It seems clear Copley believed that DeFrates had requested the cancellation of his Pekin policy and that the policy was in fact cancelled. He was simply waiting to receive his premium refund. Accordingly, we conclude that the policy issued by Pekin was cancelled by substitution.

For the foregoing reasons, the judgment of the circuit court of Champaign County is reversed.

Reversed.

TRAPP, J., concurs.

JUSTICE McCULLOUGH, specially concurring:

I agree that the judgment should be reversed. I also agree with the majority opinion that in applying *Sizelove*, the record shows that the insured secured substitute coverage and either disclosed to the insurer an intent to cancel the existing coverage or requested the cancellation under the terms of the existing policy.

I believe that the insured's intention to cancel the existing coverage was disclosed to the insurer. This varies slightly from the position taken in the majority opinion, which indicates that substitute coverage was secured and the insured requested cancellation under the terms of the existing policy.

As indicated in the majority opinion, Copley testified that he never intended to "keep" both policies. Instead, he intended to cancel the defendant's policy after the Federated policy took effect. On November 18, 1981, plaintiff testified that he was "probably" expecting a refund of his Pekin premium, and he was "looking to get a refund back."

Copley also knew that the original insurer had been notified of his intent to cancel the insurance. This intention to cancel was disclosed to the insurer by the actions of DeFrates on behalf of Copley and Copley's own conduct.